[Crim. No. 2448.   Second Appellate District, Division One.—February 16, 1934.]

THE PEOPLE, Respondent, v. CLARENCE KING et al., Defendants; VICTOR BENTSON, Appellant.

Victor L. Bentson, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

YORK, J.—Defendant was charged with violation of chapter 638, Statutes of 1931 (Deering's Gen. Laws, Act 5130b), in that he and his co-defendants on May 2, 1933, did wilfully, unlawfully and feloniously engage in the business and act in the capacity of motor carrier transportation agents without first obtaining a license therefor. The case was heard by the court sitting without a jury, and resulted in the conviction of defendant Bentson. He appeals to this court from the judgment of conviction and from the order denying his motion for a new trial.

Upon this appeal appellant contends that there is no evidence that Victor L. Bentson was an officer of the Safeway Travel Club, Ltd., or owned or had any interest in the business; that the Safeway Travel Club, Ltd., was not a common carrier, or a public utility, but was merely an incidental carrier, and, therefore, the railroad commission had no jurisdiction over its affairs. He also contends that there is no evidence that said Victor L. Bentson, for compensation, sold, offered for sale or held himself out as one who sold or offered for sale any transportation; and that by reason of the repeal of chapter 638 of Statutes of 1931 by chapter 390, Statutes of 1933, this court will be obliged to dismiss the proceeding against him and order his release.

That portion of section 1, chapter 638, Statutes of 1931, under which conviction herein was had, provides as follows: "A motor carrier transportation agent within the meaning of this act is a person . . . who, for compensation, sells or offers for sale, or negotiates for, and/or holds himself out as one who sells, furnishes or provides as principal or agent, transportation for persons over the public highways of this state, when such transportation is furnished, or is offered or proposed to be furnished by other than a carrier holding a valid certificate of public convenience and necessity issued by the railroad commission of the State of California permitting of such carrier transporting persons over such highways or any of them and between the points for which transportation is sold, or, to the border line of the State of California when one of such points is without the state. . . . "

Section 2 of the act makes it unlawful for any person "to engage in the business, or act in the capacity of a motor

carrier transportation agent within the meaning of this act without first obtaining a license therefor".

The evidence adduced at the trial of the case shows that the defendants Hayward and Bentson interviewed Mr. Buck, manager of a downtown hotel, and discussed with him the proposition of renting space for an office in the lobby of his hotel; that shortly thereafter defendant Hayward rented space at the rear of the hotel lobby and opened an office for the transaction of business under the name of "Safeway Travel Club". Defendant Bentson informed Mr. Buck that Miss Hayward would be in charge of the office, which she was until May 2, 1933, the date of arrest. Mr. Buck testified that he saw defendant Bentson in and about the hotel several times during this period and at one time saw said Bentson repairing an electric sign used to advertise the Travel Club.

Mr. Spaeth, an officer of the Better Business Bureau of Los Angeles, testified that in a conversation with defendant Bentson, the latter advised him that he was a field representative of the Travel Club, and that as such representative he contacted various hotels, barbershops and beauty parlors, and arranged through them for the sale of memberships and transportation to points where the passengers would be carried; at the same time defendant Bentson stated that the various barbershops and beauty parlors contacted would receive twenty-five per cent of any amount that would be taken in by the club upon transportation sold. Mr. Bentson then showed Mr. Spaeth a stack of blue forms containing the names of a number of hotels. In this connection said Spaeth testified: "I don't recall any of them at the moment, but there was at least 30 or 40 hotels and beauty parlors that he stated that he had contacted and that were sending their prospects to the Los Angeles office of the Travel Club." Spaeth asked to see the corporate records and Bentson went to a closet in the rear of the hotel clerk's desk and obtained a brief case and took from it papers which he stated were the corporate records of the club. From these, it appears in evidence, that a Mr. and Mrs. Stillman and Mr. Salge were the officers of the corporation.

Certain contracts entered into between the club and certain hotels were introduced in evidence dated March and

April of 1933, which were signed by the Safeway Travel Club, by "V. L. B." When asked by Spaeth how many passengers had been handled since the club was opened, defendant Bentson answered "they had had 304".

According to the testimony of Officer Moore and Policewoman Lane, they called at the office of the Travel Club on May 2, 1933, and talked to defendant Hayward relative to procuring transportation to San Francisco, asking her if she had busses going to San Francisco, and she stated that they did not have busses, but that they furnished transportation in large private cars and that she could arrange passage for them to San Francisco. She told them it would be necessary for them to pay one dollar each to her as a membership fee in the club and that the balance of four dollars each should be paid to the driver of the car that would take them to San Francisco. Thereupon they registered under the names of Mr. and Mrs. Porter, paid her the two dollars and later in the day defendant Osburn called for them at Mrs. Lane's home and took them and their baggage in a Pierce-Arrow car to an hotel on South Hill Street, where they were transferred to another car of which defendant King was the driver. He drove to various places in the city collecting passengers, and later while traveling out the Roosevelt highway en route to San Francisco, just north of Castellamare, two police officers stopped the car and placed the driver under arrest. The following day, Moore and Mrs. Lane sought a refund of their two dollars from Miss Hayward, which she agreed to return if they would bring in their pink slip or receipt. Later in the day they returned to the hotel together with Lieutenant Swan of the Los Angeles police department and found defendant Bentson seated in a chair by the desk in the office. While defendant Bentson denied having any connection with the Travel Club, his brief case was found in a closet opening off the lobby and in it were found, among other things, "receipts for money from different people" and a "list of fares from Los Angeles to different points".

Defendant Blair, whose testimony was given at the preliminary hearing and read at the trial, testified as to a conversation he had with appellant regarding a refund of money claimed by Blair to be due to him: "Bentson told me, 'Well you didn't pay us any money except $3.00, and

we have given that back to you.' I said, 'That is perfectly all right, but what about the rest of the money?' He said, 'Well, I will take it up with the directors and see what we can do.' He said, 'I will let you know, and we will take care of you. We have never had any complaints before, and we will take care of you, and see that you get it back.' "

From this we believe it is clearly shown that appellant was directly connected with and actively engaged in promoting the business of the Travel Club as a motor carrier transportation agent, as that term is defined in section 1, chapter 638, Statutes of 1931. ■ Chapter 638, *supra,* was in full force and effect at the time the transaction herein referred to took place and even at the time the appeal was taken from the judgment. The new section repealing chapter 638 did not become effective until August 20, 1933, while the appeal was taken on August 17, 1933. Furthermore, section 329 of the Political Code provides as follows: "The repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act."

■ In answer to appellant's contention that the state railroad commission has no power to regulate private carriers of passengers over the highways of the state, it has been held in the case of *People.*v. *Henry,* 131 Cal. App. 82 [21 Pac. (2d) 672, 676], that "no license is necessary to negotiate for the transportation of persons for hire by private or contract carriers over highways or parts thereof not served by common carriers. The converse of such statement shows the real meaning of the act, viz., that a license is necessary if the motor carrier transportation agent is negotiating for the sale, etc., of transportation over highways served by common carriers."

The judgment and order are affirmed.

Conrey, P. J., and Houser, J., concurred.