[Crim. Nos. 570, 571.   Fourth Dist.   Dec. 14, 1945.]

THE PEOPLE, Respondent v. HOWARD McCORD et al., Appellants.

Walter L. Gordon, Jr., and Crispus A. Wright for Appellants.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants were jointly charged in two separate actions with offenses against rationing. In one, they were charged with wilfully and unlawfully stealing about 357 gasoline coupons and stamps issued by the United States Government in furtherance of its ration program. In the other they were charged with wilfully and unlawfully acquiring approximately 1366 gallons' worth of gasoline ration stamps issued by the United States Government in furtherance of its ration program. They pleaded not guilty to each offense, the cases were consolidated for trial, and a jury was waived. The court found each defendant guilty of each offense and pronounced separate judgments, from which these appeals were taken. The appeals are presented upon separate clerk's transcripts, one reporter's transcript and one set of briefs.

It is first contended that the evidence is insufficient to support the judgments. It clearly appears from the evidence that on January 19, 1945, two truck drivers for oil companies delivered gasoline to certain oil stations and received the required gasoline ration stamps, and that about one o'clock on that day, while these trucks were parked and the drivers were eating lunch, these ration stamps were taken from the trucks. The appellants were seen by several witnesses around at least one of these trucks during the time the driver was in a restaurant eating his lunch. They remained there for some ten or fifteen minutes and then one of them was seen to enter a black Buick automobile which had been parked near by, and the Buick was driven rapidly away. The loss of the stamps was discovered shortly after one o'clock and the officers were notified. A radio message to watch for the Buick was broadcast. About two o'clock two motor patrol officers, who had received the message, saw the Buick passing Lebec. They set out in pursuit and by running 105 miles an hour caught up with the Buick about two miles south of Gor-

man. The appellants were the only occupants of the car. During the pursuit the Buick had been driven about 80 miles an hour. The officers searched the Buick but found nothing until they took off one of the hub caps. Concealed under this hub cap they found the missing ration stamps.

These ration stamps were thoroughly identified as those which had been taken from the trucks, through certain peculiarities in some of the sheets and by figures and names written on some of them. Not only were the appellants identified by several witnesses as having been at the place where the stamps were taken, at about the time they were taken, but they admitted that they had been there at that time. They denied having taken the stamps and offered the explanation that the stamps might have been placed under the hub cap by a third person, also a colored man, to whom they said they had given a ride. Not only were their stories with respect to this other man conflicting and somewhat incredible, but no attempt was made to show how he had any opportunity to put the stamps under the hub cap. He could not well have done so while the Buick was traveling at a high rate of speed. No authorities are needed to support the conclusion that the evidence, with the reasonable inferences therefrom, is amply sufficient to support the judgments.

Incidentally, it is argued that there is no evidence to prove that any of these ration stamps or coupons were issued by the United States Government in furtherance of its rationing program. There is evidence that these stamps were actually turned over to the truck drivers by the station operators for the usual purpose, and the stamps were introduced in evidence and were before the trial judge. He was entitled to draw the reasonable inferences from this evidence and all presumptions are in favor of his finding and judgment. Moreover, no objection as to the genuineness or validity of these coupons was raised in the trial court.

It is next argued in behalf of appellant McCord, alone, that his constitutional rights were violated in that it does not appear that he properly waived a jury trial since his attorney did not expressly join in the waiver. It appears, without dispute, that the district attorney stated that he had been advised that the defendants wished to waive a jury. Mr. Gordon, attorney for Thomas, then said: "For the defendant Cecil Thomas, the defendant hereby waives trial by

jury and Mr. Thomas, do you personally join in that waiver?'' The appellant Thomas replied: ''Yes, sir.'' Mr. Wright, the attorney for McCord, then said: ''Do you waive your trial by jury?'' and the appellant McCord replied: ''Yes.'' The. district attorney then said: ''I join in the waiver.'' The court then asked: ''Mr. McCord, are you waiving your trial by jury?'' The appellant McCord replied: ''Yes, sir.'' The court then replied: ''All right then, there is nothing to do but excuse the jury.'' The appellants rely on certain cases where it has been held that in felony cases the waiver of a jury by counsel is not sufficient unless it is joined in by a defendant personally. These cases have no application here. (*People* v. *Noland*, 30 Cal.App.2d 386 [86 P.2d 363].) Counsel for Thomas expressly waived a jury and in response to his counsel's question Thomas joined in that waiver. Counsel for McCord then turned to him and asked him if he waived a trial by jury and he replied that he did. The court then repeated the question to McCord, receiving an affirmative reply. This counsel said nothing further and proceeded with the trial. Under these circumstances, this was a sufficient expression on the part of McCord's counsel that he was also joining in the waiver of a jury trial, and the court was obviously justified in so understanding. No prejudicial error or violation of rights appears in this regard.

Finally, it is argued, without citation of authority, that the statutes under which these convictions were obtained expired when the gasoline rationing program ended on August 15, 1945, and that it follows that this terminated the sentences which were here imposed. Section 9608 of the Government Code, continuing a law long in force and formerly set forth in section 329 of the Political Code, provides that the termination or suspension of any law creating a criminal offense does not constitute a bar to the punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such punishment is expressly declared. Chapter 9, entitled ''Offenses Against Rationing,'' was added to title 13 of part 1 of the Penal Code by Statutes, 4th Extra Session, 1944, chapter 42, section 1. Section 2 thereof provides that chapter 9, thus added to the Penal Code, shall have no force and effect from and after the termination of rationing programs pursuant to the laws of the United States. Nowhere is there any expressed intention to bar the punishment of one found guilty of such an offense

prior to such termination. The offenses here in question were committed on January 19, 1945, and the judgments were pronounced on April 13, 1945. Under no theory could it be held that the offenses in question were in any way lessened or mitigated by the fact that, as happened by chance, the articles stolen would have been of no value to the appellants if they had been taken some eight months later than they were. We are cited to no provision of law, and we know of none, which would bar the appellants from punishment for what were very grave offenses at the time they were committed and at the time the punishments were imposed.

Each of the judgments is affirmed.

Marks, J., and Griffin, J., concurred.