[Crim. No. 3935. Second Dist., Div. Three. Feb. 8, 1946.]

THE PEOPLE, Respondent, v. HARRY GROSOFSKY et al., Appellants.

Morris Lavine for Appellants.

Robert W. Kenny, Attorney General, and Robert S. Morris, Jr., Deputy Attorney General, for Respondent.

SHINN, J.—Defendants were convicted in a court trial of the sale of gasoline ration stamps, in violation of section 543 of the Penal Code. Proceedings were suspended and each defendant was granted probation for a period of three

years, on condition that he serve 90 days in the county jail. They made motions for a new trial, which were denied, and they gave notice of appeal from the orders denying the motions "and from all proceedings theretofore had in the case."

Defendants urge the following grounds for reversal of the orders: (1) Termination of gas rationing terminated the authority of the State to further prosecute the case; (2) the state statute is unconstitutional, in that it interferes with the exclusive province of the United States Government; (3) the evidence shows that the defendants were entrapped, and (4) the judgment is contrary to the law and the evidence.

Under section 543 of the Penal Code, one who buys, sells, or otherwise acquires or transfers for a valuable consideration coupons, etc., issued by the United States Government or any agency thereof is punishable by imprisonment in the state prison or in the county jail or by fine, or by both fine and imprisonment. Section 2 of Statutes 1944, 4th Extra Session, chapter 42, which added chapter 9 entitled, "Offenses Against Rationing," to title 13 of part I of the Penal Code, reads as follows: "The chapter of the Penal Code added by this act shall have no force or effect from and upon the termination of rationing programs pursuant to the laws of the United States of America." Defendants say: "Since the gas rationing program terminated on or about August 15, 1945, the force and effect of the law terminated and this prosecution should, therefore, be dismissed." The offense was committed August 11, 1944, and the information was filed in the same month—a year before the termination of gas rationing. The case of *United States* v. *Chambers,* 291 U.S. 217 [50 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510], relied upon by defendants, did not decide the same question. The court there held only that the adoption of the 21st Amendment to the Constitution, repealing the 18th Amendment without a saving clause, restricted the legislative authority of Congress, and that sentence on a plea of guilty of violation of the National Prohibition Act by one defendant should be abated, and that the prosecution should be dismissed as to defendants awaiting trial. There can be no question as to the power of the Legislature to authorize the prosecution to final judgment of acts which were violations of rationing restrictions at the time of their commission, and to execute judgments of conviction. The Legislature has exercised this

power by enacting section 9608 of the Government Code, which authorizes prosecution in such cases unless the act terminating or suspending the law creating the criminal offense expressly declares a contrary intention. We are concerned here only with the expressed legislative intention, and we find nothing in the language of section 2 which expressly or by implication declares an intention that those who violate the laws governing rationing, prior to their becoming inoperative, should escape their just punishment. We are in accord with the holding of the court and the reasoning supporting the same in *People* v. *McCord* (1946), 72 Cal.App. 2d 223 [164 P.2d 50], in which the same point was decided contrary to the contentions of appellants herein.

The state statute is not unconstitutional as an interference with the exclusive powers or jurisdiction of the United States Government. *People* v. *Kelly* (1869), 38 Cal. 145 [99 Am.Dec. 360], relied upon by appellants, does not sustain their position. The court there said: "The same act may, in some instances, be an offense against the laws of both [the United States and the state], and it is only as an offense against the State laws that it can be punished by the state, in any event." In that case the court was considering a charge of perjury based upon false swearing in a matter pending before the register of the United States Land Office. The statements quoted in the opinion from *State* v. *Pike* (1844), 15 N.H. 83, which defendants attribute to our Supreme Court, had to do with a charge of perjury in a bankruptcy proceeding. It was held in both cases that "the acts cannot be regarded as having been done under the sanction of the laws of this State, so as to subject the parties to punishment under those laws." This is not true of the offense under consideration. It is comparable to the offense of counterfeiting, which is a state as well as federal offense, and may be punished under the state laws. (*People* v. *White* (1867), 34 Cal. 183.) The court there held that the state statute was not repugnant to the Constitution of the United States (art. I, § 8, subds. 5, 6) or the laws of Congress. *People* v. *McDonnell* (1889), 80 Cal. 285 [22 P. 190, 13 Am.St.Rep. 159], was another counterfeiting case. A pertinent statement of the court is the following (p. 292): "The defendant here is not sought to be punished under any federal statute *as such*. He has been tried and convicted in a state court, under a state law having for its object prevention of the

passing to her citizens fraudulently, and to their damage, of counterfeit bank notes of a foreign bank.'' It seems too clear for argument that a state has authority to protect the public morals and welfare of its citizens by prescribing punishment for black market operations.

 The next point urged is that the evidence shows the defendants were entrapped. The argument is that defendants would not have committed the offense had they not been enticed into it by an emissary of the officials of the Office of Price Administration. The following facts were developed by the evidence: defendants operated a gasoline station in Los Angeles; on or about the 15th of July, 1944, one John D. Samuels, an aircraft employee, purchased from Jack Grosofsky three gallons of gas, surrendering no coupon therefor; a few days later he purchased more gas from Harry Grosofsky; thereafter he went to the station and told Jack Grosofsky that he wanted to take a trip and inquired about arranging for some gas, and this defendant replied that he could sell him some tickets any time he wanted them. Later in July, Samuels had a conversation with Harry Grosofsky in which the latter stated that Samuels could get gas tickets from him. Samuels then contacted officials of the O.P.A. and was given three marked $10 bills with which to purchase gas coupons at the price that had been quoted to him, namely, $30 for 100 gallons. Samuels went to defendants' station on August 10, 1944, bought three gallons of gas from Jack Grosofsky and told him that he would take 100 gallons worth of tickets—20 stamps. He was told to park beside the station, which he did; Harry Grosofsky called him into the office and exchanged 20 stamps for $30. The O.P.A. officers stationed nearby closed in, took the stamps from Samuels and the marked money from Harry Grosofsky, and arrested the defendants. Samuels was not compensated by O.P.A. officials for his participation in the transaction.

 The law on the subject of entrapment is stated in *People* v. *Malone* (1931), 117 Cal.App. 629 at 633 [4 P.2d 287]. There is no entrapment unless the intent originates with the officers and the accused is induced to commit a crime which was not contemplated by him. The furnishing of money with which to purchase liquor has been held not to constitute entrapment. (*People* v. *Rodriguez* (1923), 61 Cal.App. 69 [214 P. 452]; *People* v. *Caiazza* (1923), 61 Cal.App. 505 [215 P. 80].)

By the serial numbers upon the coupons purchased by Samuels, and which were received in evidence, and by marks upon some of them showing that an attempt had been made to destroy them, it was established that the stamps were such as could not have been lawfully in the possession of defendants. On May 16, 1944, 95,000 gasoline coupons were placed in a vault by O.P.A. operations officers preparatory to their cancellation and destruction. On August 2, other O.P.A. employees took the stamps to the plant of the Fiber Board Products Company, where they were placed in a macerater. Due to the failure of the macerater to do what was expected of it, some of the stamps survived the operation and found their way into circulation. In addition to those sold to Samuels, 45 C-3 coupons and 13 B coupons were found in a small tire repair building at the gas station of defendants on the day of their arrest. These were of the same sequence of numbers as the ones sold to Samuels.

The case was tried upon the evidence adduced at the preliminary hearing. Defendants did not testify. The conclusion is inescapable that the coupons were in the possession of defendants for the purpose of sale. Defendants were not led into the commission of a crime but only into a mistake in the commission of a crime, in that they selected as a customer a knight errant of the O.P.A.

The orders denying the motions for new trial are affirmed. The attempted appeal from all other orders is dismissed.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied February 19, 1946, and appellants' petition for a hearing by the Supreme Court was denied March 6, 1946. Carter, J., and Schauer, J., voted for a hearing.