351 P.2d 329]

[Crim. No. 6532. In Bank. Apr. 8, 1960.]

THE PEOPLE, Respondent, v. ROBERT S. HARMON, Appellant.

( 9 )

14

Robert Stanley Harmon, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

SCHAUER, J.—A jury found defendant guilty of violation of section 4500 of the Penal Code (assault with malice aforethought by force likely to produce great bodily injury, committed by one undergoing a life sentence in a state prison). Section 4500 as it read at the time of the commission of the assault and at the time of judgment herein (Stats. 1941, ch. 106, § 15) made the death penalty for such offense mandatory. This appeal from the judgment of death is taken pursuant to subdivision (b) of section 1239 of the Penal Code.

After judgment defendant asked that his court-appointed trial counsel be relieved. At a subsequent superior court hearing to settle the reporter's transcript, defendant was represented by another counsel, also court-appointed. This court, on defendant's request for counsel on appeal, appointed yet another attorney, who has since been relieved at defendant's request. Defendant in propria persona presents the following contentions: (1) he did not have opportunity to consult privately with counsel prior to trial; (2) the trial judge erroneously refused defendant's request for change of trial counsel after defendant's counsel indicated that he "was not willing to help in subpoenaing proper witnesses to support a good case for the defendant"; (3) this court should reexamine and overrule its holdings that section 4500 of the Penal Code applies to prisoners who are serving indeterminate sentences with a maximum statutory punishment of life imprisonment and whose terms have not been "fixed" (by specifically designating them as life terms) by the Adult Authority, and that such application of section 4500 is constitutional; (4) the trial judge erred in the admission of evidence; (5) the prosecuting attorney was guilty of misconduct. We have concluded that

defendant's contentions are without merit and our independent review of the record has convinced us that the judgment should be affirmed.

Defendant's contentions that he was denied effective representation of counsel are bare assertions without support in the record. The transcript does not disclose that defendant had any disagreement with his trial counsel, or that any complaint concerning defendant's representation was presented to the trial court. So far as appears these contentions are recent figments of defendant's imagination.

Defendant is directly chargeable with responsibility for the incongruity between his contentions and the record. With considerable experience in criminal law (in the capacity of one repeatedly accused and convicted of crime), defendant has chosen to refuse the services of court-appointed counsel on appeal. The testimony of defendant and the brief which he has himself prepared indicate that he is of sufficient intelligence that he should be able to appreciate the consequences of his insistence on representing himself on appeal. A letter sent by defendant personally to the district attorney after his arraignment and before the filing of the information herein suggests that defendant may have overestimated his legal ability.[1]　 However, it appears the following rules should apply:

"Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney." (*People* v. *Mattson* (1959), 51 Cal.2d 777, 788-789 [336 P.2d 937]; see *Reynolds* v. *United States* (1959, C.A. 9), 267 F.2d 235, 236; *Duke* v. *United States* (1958, C.A. 9), 255 F.2d 721, 724 [4, 5], cert. den. 357 U.S. 920 [78 S.Ct. 1361, 2 L.Ed.2d 1365].)　 When defendant in this court requested termination of the appointment of his counsel we were "not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer" (*People* v. *Linden* (1959), 52 Cal.2d 1, 17 [3] [338 P.2d 397]) and, having competently elected to represent himself, defendant "assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken" (*People* v. *Mattson* (1959), *supra,* 51 Cal.2d 777, 794 [17]).

---

[1]Defendant wrote, among other things, "Sir, you can tell your assistant that even though I have a Life sentence, I know that I cannot be charged with a 4500. Besides that baby rapper [*sic*] never died."

16

Defendant makes the assertion, unsupported by the record, that there was "no sufficient proof" that he was serving a life sentence on May 2, 1959, the date of the assault, and June 30, 1959, the date of rendition of judgment. On those dates defendant was confined under a judgment of conviction of two counts of first degree robbery, sentences running consecutively. The penalty for robbery of the first degree is imprisonment for not less than five years (Pen. Code, § 213, subd. 1) with a maximum punishment of life imprisonment (Pen. Code, § 671). Defendant testified that his term had not been fixed by the Adult Authority, although he had repeatedly appeared before that body at hearings relating to the fixing of terms. Defendant is mistaken as to the nature and effect of the action taken by the Adult Authority. ■■■ Penal Code, section 671, provides that "Whenever any person is declared punishable for a crime by imprisonment in the state prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, punishment of such offender shall be imprisonment during his natural life" subject to the provisions of part 3 of the Penal Code providing for an Adult Authority and administration of the indeterminate sentence law. (See Pen. Code, §§ 1168,[2] 3020[3] and related sections.) By the terms of the applicable statutes a defendant sentenced under section 213 of the Penal Code to imprisonment in a state prison "for not less than five years" is under a life sentence unless and until the Adult Authority sees fit to relieve him of the life sentence by limiting (subject to the provisions of the above referred to Penal Code sections) the punishment to imprisonment for a span of years. In the case of a life term convict who the Authority does not believe merits a lesser term it may, and customarily does, act by simply refraining from fixing his term at a span of years. Since by statute he is already serving a life term there is no occasion for the Authority to re-declare the fact.

■■■ From what has been stated above it is clear that under

____

[2]Pen. Code, § 1168: "Every person convicted of a public offense, for which imprisonment in any reformatory or State prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to be imprisoned in a State prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment."

[3]Pen. Code, § 3020: "In the case of all persons heretofore or hereafter sentenced under the provisions of Section 1168 of this code, the Adult Authority may determine and redetermine, after the expiration of six months, from and after the actual commencement of imprisonment, what length of time, if any, such person shall be imprisoned . . ."

the law of this state, defendant was "undergoing a life sentence" within the meaning of section 4500 of the Penal Code.[4] Such construction and application of the statute have repeatedly been held constitutional. In *People* v. *Jefferson* (1956), 47 Cal.2d 438, 442-444 [3-6] [303 P.2d 1024], and *People* v. *Berry* (1955), 44 Cal.2d 426, 430 [1] [282 P.2d 861], we reaffirmed the views expressed in *People* v. *Wells* (1949), 33 Cal.2d 330, 334-337 [2a-2b] [202 P.2d 53], and cases there cited, where arguments similar to those advanced by defendant here had been discussed and rejected. Other arguments concerning the application and constitutionality of section 4500 which are reiterated by defendant were viewed favorably in *Ex parte Wells* (1950, D.C., N.D.Cal., S.D.), 90 F.Supp. 855, 858 [1], but thereafter rejected by this court in the case of *In re Wells* (1950), 35 Cal.2d 889, 891-894 [1-3] [221 P.2d 947]. And *Ex parte Wells* (1951, D.C., N.D.Cal., S.D.), 99 F.Supp. 320, 324-326, which asserted the unconstitutionality of the statute as construed by this court, and which is relied on by defendant here, was reversed in *Duffy* v. *Wells* (1953, C.A. 9), 201 F.2d 503, 505-506 [2-6]. We consider this matter settled.

The following evidence sustains the verdict: Gerald Garrow, victim of the assault, testified as follows: On May 2, 1959, he was a prisoner at Soledad State Prison. At 6:15 p. m. on that date he was seated in a recreation room of the prison, watching television, when a prisoner known to him as Shortie[5] stabbed him in the chest and stomach. Garrow "got up, and all of a sudden I started feeling stabs in my back . . . I turned around and I could see the defendant here. . . . I don't know if he had something in his hand or what, but he was the one standing directly in back of me, and I am pretty sure I caught a glimpse of the knife when I pulled away." Garrow ran from the room and a guard took him to the prison hospital. Garrow

---

[4]Section 4500 (Stats. 1941, ch. 106, § 15), from before the date of the assault (May 2, 1959) until after the date of rendition of judgment herein (June 30, 1959), provided that "Every person undergoing a life sentence in a State prison of this State, who, with malice aforethought, commits an assault upon the person of another . . . by any means of force likely to produce great bodily injury, is punishable with death." (The 1959 amendment of section 4500 (Stats. 1959, ch. 529), which concerns penalty only, is quoted and its effect discussed *infra*.)

[5]This prisoner, James Schreckengost, was charged in the information under which defendant Harmon was tried with violation of section 4501 of the Penal Code (aggravated assault by a prisoner serving a term less than life); on motion of the prosecuting attorney the count against Schreckengost was dismissed. Defendant testified that Schreckengost pleaded guilty to some unspecified offense.

had suffered eight stab wounds about the ribs and in the abdomen.

The following testimony of Garrow was received upon the question of a malicious motive actuating the attack: During the days shortly before the stabbing defendant, sometimes with Shortie, had asked Garrow to steal candy and tobacco from other prisoners and give them to defendant, to have sexual relations, and to give Garrow's cigarettes to defendant in exchange for "protection." Defendant and Shortie also offered Garrow a knife for use against another prisoner with whom Garrow had had an altercation. Garrow brusquely refused these requests and offers.

Guards who searched the recreation room after the stabbing found that a window pane had been broken from the inside and two knives which could have caused Garrow's wounds were on the ground outside the window. As might have been expected, other prisoners, called by the prosecution and the defendant, refused to testify.

At 10:45 a. m. on May 4, 1959, defendant at his own request made a statement, which was reported and transcribed, to Correctional Captain Paul Rendleman. In this statement defendant admitted the stabbing but said that Shortie did not participate in the attack. Shortly after 11 a. m. on May 4, defendant appeared before the prison disciplinary committee, again admitted the attack but said that Shortie had not participated, and said, "I am disappointed the punk didn't die. He should have died." After his appearance before the disciplinary committee defendant signed the statement which he had made to the correctional captain.

At the trial defendant testified that he did not participate in the stabbing; that he made an untrue statement to the correctional captain because he had been repeatedly questioned concerning the affair "and I was tired of that stuff" and did not want to go before the disciplinary committee; and that when he appeared before the disciplinary committee "I didn't say anything there. I just sat there and they did the talking."

By special verdict the jury found "that the purported confession of Defendant . . . was made voluntarily by him."

Defendant asserts that the testimony of the correctional captain concerning the voluntariness of defendant's statement to him was erroneously received over objection. The prosecuting attorney asked the captain, "Was this statement given to you by Mr. Harmon without any force or duress being used upon you [sic]?" The witness answered, "Yes." De-

fense counsel said, "I object to the conclusion of the witness. I would prefer under the circumstances to have him describe specifically the conditions under which any such statement may have been taken." The trial court said, "The objection is overruled. You may cross-examine him on that point."

At the request of the prosecuting attorney the reporter re-read the foregoing question and the captain testified, "It was."

The prosecuting attorney then asked the following questions and the captain gave the following answers:

"Q. Was it given to you by Mr. Harmon on the promises of any leniency or immunity being made to you [sic]? A. It was.

"Q. It was given to you without any threats being made upon Mr. Harmon? A. Yes."

Defendant complains of the inconsistency in the foregoing testimony. This is not ground for excluding it. And, as the jury by their special verdict impliedly found, apparent confusion in the questions and inconsistency in the answers were inadvertent slips of the tongue and the prosecuting attorney intended to ask and the captain understood that he was being asked and intended to testify that no force or duress was exercised against and no promises of leniency made to defendant. Certainly we cannot hold that the evidence as a whole does not support the special verdict.

There is no merit in defendant's complaint that the foregoing questions called for objectionable conclusions of the witness. (*People* v. *Jackson* (1903), 138 Cal. 462, 466 [71 P. 566].) Before the statement was received in evidence the prosecution introduced the requisite "preliminary proof showing that it was freely and voluntarily made" and defendant did not specifically ask, and presumably would have been accorded opportunity if he had asked, to cross-examine the captain or "to introduce evidence to overcome the prima facie showing." (*People* v. *Gonzales* (1944), 24 Cal.2d 870, 876 [4] [151 P.2d 251].)

Defendant asserts that the trial court erred in admitting photographs in evidence. The photographs were of the recreation room, the broken window pane and the ground where the knives were found, and the victim Garrow's wounds. They are relevant and not gruesome, and there is not even room for argument that they might have had a prejudicial effect which could outweigh their probative value. (See *People* v. *Atchley* (1959), 53 Cal.2d 160, 168 [1, 2] [346 P.2d 764].)

Defendant urges that the trial court erred in allowing the prosecuting attorney to demonstrate to the jury " [b]y

taking a knife which was in evidence, and showing the jury how this knife could have inflicted certain holes in Gerald Garrow's shirt." The record does not suggest that any misleading or improperly melodramatic demonstration occurred.

 Without explanation or reference to the transcript defendant asserts that the prosecuting attorney made "an improper opening statement." That statement was a brief, temporate recital, free from error, of what the People were required to, and expected to, prove in order to warrant a conviction of violation of section 4500.

 During *voir dire* examination of prospective jurors the trial judge asked defense counsel whether he or defendant would object to the questioning of such jurors as to whether they had any conscientious objection to the death penalty; the judge said, " [W]hile I instruct them with respect to the fact that they are not to consider penalty, it probably will come out some time during the case [that the death penalty would be mandatory on conviction of violation of section 4500 of the Penal Code]. It might even come out in argument." Defendant's counsel said that he did not consider the asking of such questions objectionable and, after private consultation with defendant, repeated this view. Such inquiry is proper where the jurors must make a selection between the penalties of death and life imprisonment. (*People* v. *Wein* (1958), 50 Cal.2d 383, 394 [1] [326 P.2d 457] ; *People* v. *Cheary* (1957), 48 Cal.2d 301, 311 [6] [309 P.2d 431].) Where, as here, the jury's finding that defendant was guilty of the charged offense would require the trial court to impose the death sentence, it appears that inquiry as to their conscientious views concerning the death penalty and advice as to the effect of their verdict is equally proper; it would seem altogether unrealistic and unconscionable to expect jurors who sincerely disbelieve in capital punishment to nevertheless yield full fidelity to the law and thereunder to fairly appraise the evidence in a case in which a finding of guilt as charged would require rendition of judgment of death.

Section 4500 of the Penal Code, which made the death penalty mandatory at the time of the commission of the crime (May 2, 1959) and the rendition of judgment herein (June 30, 1959), was amended effective September 18, 1959 (Stats. 1959, ch. 529), to provide a procedure whereby one who violates the section without killing his victim (as was the case here) has the possibility, in the discretion of the trial judge or jury, of a decision or verdict selecting punishment less

severe than death.[6] We are faced with the question whether defendant is entitled to the benefit of this amendment.

 As related in *Sekt* v. *Justice's Court* (1945), 26 Cal. 2d 297, 300-302 [159 P.2d 17, 167 A.L.R. 833], California has long had a general statutory saving clause (now Gov. Code, § 9608[7]) to avoid application of the common-law rule (p. 304 [3] of 26 Cal.2d) that outright repeal of a penal statute without a saving clause deprives any court in which a prosecution or appeal under such statute is pending of power to proceed further against the defendant. Under the general saving clause, it has been held (with reference to former Pol. Code, § 329, the materially similar predecessor of Gov. Code, § 9608), where a penal statute is repealed, or amended to reduce the legislatively prescribed punishment, after a defendant has violated the statute and before judgment of conviction thereof has become final, the defendant is punishable under the law as it read when his offense was committed. (*People* v. *Fowler* (1959), 175 Cal.App.2d 808, 812 [12, 13] [346 P.2d 792]; *People* v. *Mason* (1958), 163 Cal. App.2d 630, 631-632 [1] [329 P.2d 614]; *In re Crane* (1935), 4 Cal.App.2d 265, 266-267 [1] [41 P.2d 179]; *People* v. *King* (1934), 136 Cal.App. 717, 721 [2] [29 P.2d 870]; *People* v. *Lindsay* (1925), 75 Cal.App. 115, 121 [5] [242 P. 87]; *People* v. *Edwards* (1925), 72 Cal.App. 102, 118 [20] [236 P. 944];

[6]The 1959 amendment added the following italicized provisions to section 4500: ''Every person undergoing a life sentence in a state prison of this State, who, with malice aforethought, commits an assault upon the person of another . . . by any means of force likely to produce great bodily injury is punishable with death; *provided, however, in cases in which the person subjected to such assault does not die within a year and a day after such assault and as a proximate result thereof, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same, and the matter of punishment shall be determined as provided in Section 190.1 of this code. . . .''* (Italics added.) (Section 190.1 provides that, where a defendant is convicted of a crime punishable in the alternative by death or life imprisonment, the penalty is selected at a stage of the trial distinct from those at which the issue of guilt and any issue of not guilty by reason of insanity are determined; the section prescribes the procedure for the selection of penalty.)

[7]Section 9608 of the Government Code provides, ''The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law.'' (No such ''applicable provision of law'' as that last referred to exists here.)

*People* v. *Williams* (1914), 24 Cal.App. 646, 650 [142 P. 124]; see *People* v. *McNulty* (1892), 93 Cal. 427, 438-439 [26 P. 597, 29 P. 61]; *People* v. *Grosofsky* (1946), 73 Cal.App.2d 15, 16-17 [1] [165 P.2d 757]; *People* v. *McCord* (1946), 72 Cal.App.2d 223, 226 [4] [164 P.2d 50].) In *People* v. *Pratt* (1924), 67 Cal.App. 606, 608 [2] [228 P. 47], and *People* v. *Davis* (1924), 67 Cal.App. 210, 215 [3, 4] [227 P. 494], the general saving clause was applied in a situation similar to that presented here; i.e., after the defendant committed a crime for which the penalty was prescribed by statute, there became effective an amendment under which the jury might choose an alternative, less severe punishment. We accept the holdings of the just cited cases that, by virtue of the general saving clause, an amendatory statute mitigating punishment which is silent as to whether it shall be retrospective or prospective in operation, does not apply to an offense committed before its effective date.

Although this question has not been previously passed upon by this court,[8] the view which we adopt appears implicit in our rulings upon related questions in *People* v. *Mitchell* (1946), 27 Cal.2d 678, 682 [footnote], 684-685 [5] [166 P.2d 10]. The decisions of the District Courts of Appeal which we accept have been the expressly declared law of this state since *People* v. *Williams* (1914), *supra*, 24 Cal.App. 646, 650, and it can fairly be assumed in fact (as it is presumed in law; see *People* v. *Nash* (1959), 52 Cal.2d 36, 43 [1] [338 P.2d 416]) that the Legislature has known of these decisions and that its intent concerning the present amendment as to punishment has been formed in the light of such decisions' application of the general saving clause. This view of the legislative intent is confirmed by the fact that the Legislature, when it desires to make an ameliorating amendment retrospective in effect, knows how to do so and does so expressly. (See, e.g., the 1951 amendment of Pen. Code, § 209 [Stats. 1951, ch. 1749]; the 1943 enactment of Pen. Code, §§ 3100-3116 [Stats. 1943, ch. 396]; the 1931 amendment of Pen.

---

[8]As hereinafter specifically pointed out, the judicially developed rules stated in the Sekt case (1945), *supra*, pp. 304-308 [3-7] of 26 Cal.2d, as to the effect of the repeal and ameliorative amendment of penal statutes concern situations where there is no saving clause. In *People* v. *Chessman* (1951), 38 Cal.2d 166, 191-192 [31a] [238 P.2d 1001], it is said, of the argument for retroactivity presently advanced on behalf of this defendant, that it "would be relevant" (not that it would be accepted or rejected) if it were applicable to the facts, but it is concluded that it was not so applicable.

Code, § 1168 [Stats. 1931, ch. 483, subd. (6)] given retroactive application in *People* v. *Stratton* (1934), 136 Cal.App. 201, 208 [28 P.2d 695].)

On behalf of defendant it is urged that California should change the rule of the above cited decisions of the District Courts of Appeal and, in the face of the saving clause, adopt the rule, judicially developed in other jurisdictions, that, as stated in the Sekt case, *supra*, page 305 [4] of 26 Cal.2d, "Where the later statute reduces the punishment the cases quite uniformly hold that the offender may be punished under the new law." This rule, and the other rules so carefully stated in the Sekt opinion at pages 304-308 [3-7] of 26 Cal.2d, as there pointed out, are based upon "presumed legislative intent" as to the effect of statutory repeals or changes *without* an express saving clause. The cases there cited[9] for the rule urged on behalf of defendant did not have to do with any saving clause;[10] their concern was, in the absence of such a clause, to avoid remission of *all* punishment in the face of the objection that the new law was *ex post facto* (a view which was rejected because the new law decreased rather than increased punishment), and the objection that the old law could not apply because of the rule that outright repeal of a criminal statute without a saving clause terminates pending prosecutions (a view which was rejected on the ground of legislative intent).

 Despite the view accepted by the majority of the New York Court of Appeals in *People* v. *Oliver* (1956), 1 N.Y.2d 152, 160 [134 N.E.2d 197, 151 N.Y.S.2d 367, 373], and despite the rule that the defendant in a criminal case is entitled to the benefit of every reasonable doubt in statutory construction and application (*Ex parte Rosenheim* (1890), 83 Cal. 388, 391 [23 P. 372]), we find no basis for implying an intention of the California Legislature that amendments ameliorating punishment should have retroactive operation in the face of

[9]*State* v. *Williams* (1846), 2 Rich. Law (S.C.) 418 [45 Am.Dec. 741, 744]; *People* v. *Hayes* (1894), 140 N.Y. 484 [35 N.E. 951, 37 Am.St.Rep. 572, 576, 7 L.R.A. 830]; *Hernandez* v. *State* (1934), 43 Ariz. 424 [32 P.2d 18, 24]; *Woo Dak San* v. *State* (1931), 36 N.M. 53 [7 P.2d 940, 941]; *State* ex rel. *Pierre* v. *Jones* (1942), 200 La. 808 [9 So.2d 42, 47 [3]]; *Malloy* v. *South Carolina* (1915), 237 U.S. 180, 185 [35 S.Ct. 507, 59 L.Ed. 905].

[10]In other jurisdictions, as in California, a contrary conclusion has been reached where there was a saving clause. *Ex parte Browne* (1927), 93 Fla. 332 [111 So. 518, 519 [1]]; *Commonwealth* v. *Sherman* (1887), 85 Ky. 686 [4 S.W. 790, 792]; *United States* v. *Taylor* (1954, D.C. N.Y.), 123 F.Supp. 920, 921, 923, affirmed 227 F.2d 958; see *Jones* v. *State* (1937), 132 Tex.Crim.Rep. 445 [104 S.W.2d 871, 872 [1]].

the general saving clause. It is true that there is no express statement in such clause (Gov. Code, § 9608, quoted *supra*, footnote 7) as to whether the offender should be punished under the old or the new law. But consideration of its history impels the conclusion that it was intended to save the old law as applicable to offenses committed before the effective date of the new law. As recounted in Sekt (p. 300 of 26 Cal.2d), the predecessor of section 9608 of the Government Code was enacted in 1853 to repudiate the common-law rule of complete remission of prosecution by outright repeal of a penal law, and it was properly and consistently (beginning with *People* v. *Barbour* (1858), 9 Cal. 230, 231, 234) held to have that effect. Thereafter, when cases advancing the contention that a statutory mitigation of punishment effected a total remission arose in California, it was consistently, and in our opinion properly, held that the saving clause preserved the former punishment, when penal statutes were amended to mitigate punishment, so that such mitigation did not apply to those who had offended before the ameliorating amendment. That is, the Legislature was considered to have intended that such clause (which of course was expressly directed to the question of saving) should save all that was possible in the absence of contrary legislative expression directed to the specific new, mitigating statute. Now defendant would have us find a newly arisen, contrary legislative intent in an amendatory statute such as the one with which we are here concerned (the 1959 amendment of Pen. Code, § 4500, quoted *supra*, footnote 6) although that amendment says nothing about the subject of saving. If the Legislature at some unspecified time between 1853 and 1959 acquired an intent to silently do all it could to mitigate punishment by an amendatory statute which says nothing as to whether such mitigation shall be prospective or retrospective, it could also have acquired a similar tacit purpose to remit all it could by a repealing statute. We cannot accede to the view that the Legislature has evidenced an intention that the long standing saving clause shall be or has become of less or of no effect.

Rather, the amending (and amended) statute defining the crime and prescribing the punishment (Pen. Code, § 4500) and the general saving clause (Gov. Code, § 9608) are to be read together as one act. (See *United States* v. *Reisinger* (1888), 128 U.S. 398, 401 [9 S.Ct. 99, 32 L.Ed. 480].) So stated, they would read substantially as follows:

Every person undergoing a life sentence who, with malice

aforethought, commits an assault by any means of force likely to produce great bodily injury is punishable with death; provided, however, in cases in which the person subjected to such assault does not die within a year and a day after such assault and as a proximate result thereof, the punishment shall be death or imprisonment for life without possibility of parole for nine years, at the discretion of the court or jury trying the same; *provided, further,* that the 1959 amendment of this law creating a criminal offense does not constitute a bar to the punishment, pursuant to this law as it read prior to such amendment, of an act already committed in violation of such law. The language as last above stated faithfully gives effect to the amending and amended statute and to the saving clause.

 Such reading of the pertinent statutes is in accord with the following settled general principles: The Penal Code, as enacted in 1872, provided and it still provides (§ 3) that "No part of it is retroactive, unless expressly so declared." This provision, of course, is not limited in application to the code as it read when it was enacted; it is but a restatement of a "general rule of statutory construction" (*Von Schmidt* v. *Huntington* (1850), 1 Cal. 55, 65) recognized by the Code Commissioners by their citation of that and kindred cases.

 "It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.* (1947), 30 Cal.2d 388, 393 [5] [182 P.2d 159].)

This court's consideration and rejection of an argument in the Aetna case (p. 395 [7] of 30 Cal.2d), in the following language, when transposed to the facts of the present case and the law which governs the effect of the 1959 amendment of section 4500, is pertinent and persuasive: "It is argued that since the provisions of the Workmen's Compensation Act are to be liberally construed to extend their benefits to injured persons (Lab. Code, § 3203), the legislative intention that the amendment should operate retrospectively must be implied. No authority is cited for this novel doctrine which would require the court to ignore the rule against retroactive operation with respect to statutes increasing benefits to persons favored by remedial legislation. The rule of liberal construction and the rule that statutes should ordinarily be construed to operate prospectively are neither inconsistent nor mutually exclusive. They relate to different aspects of the interpretation of statutes, and are found in most of the codes, including

the Labor Code. (Civ. Code, §§ 3, 4; Code Civ. Proc., §§ 3, 4; Pen. Code, §§ 3, 4; Lab. Code, §§ 4, 3202.) It would be a most peculiar judicial reasoning which would allow one such doctrine to be invoked for the purpose of destroying the other. It seems clear, therefore, that the legislative intent in favor of the retrospective operation of a statute cannot be implied from the mere fact that the statute is remedial and subject to the rule of liberal construction.''

Also, the rule is firmly established that ''Courts do not favor repeal by implication [citation]. 'The presumption is always against the intention to repeal where express terms are not used. To justify the presumption of an intention to repeal one statute by another, either the two statutes must be irreconcilable, or the intent to effect a repeal must be otherwise clearly expressed' [citation], neither of which conditions is present here.'' (*People* v. *Martin* (1922), 188 Cal. 281, 285 [4] [205 P. 121, 21 A.L.R. 1399].) Ameliorative amendment of a statute prescribing punishment should not be presumed to have been intended to effect retrospective repeal of the punishment prescribed at the time of the offense, and certainly it should not be presumed to have been intended to effect retrospective *pro tanto* repeal of the general saving clause (Gov. Code, § 9608). And just as, in the absence of constitutional objection, legislation is not repealed by changed conditions (*Palermo* v. *Stockton Theatres, Inc.* (1948), 32 Cal.2d 53, 63 [195 P.2d 1]; *People* v. *Statley* (1949), 91 Cal.App.2d Supp. 943, 945 [206 P.2d 76]), so it is not changed by development of more lenient penological theory.

Furthermore, if the severe penalty formerly mandatory under section 4500 of the Penal Code is to have its intended deterrent effect, then it is important (where, as here, the Legislature is silent on the question) that the section should be applied with certainty as it read on the date of the offense. The law as to this defendant has not accomplished all of its intended function; he did not reflect and refrain from stabbing his fellow prisoner. But certainty of application, particularly in the present situation, can still have a deterrent effect on other prisoners—and thereby save the lives of still other prisoners and guards. It is not often that we have evidence in the record before us that a defendant actually did consider the effect of the penalty for his crime. Here, however, we do have some evidence to that effect; i.e., after the crime, this defendant wrote to the prosecuting attorney that ''even though I have a Life sentence, I know that I can-

not be charged with a 4500. Besides [the victim] . . . never died.'' When prisoners are actually considering and interpreting the effect of statutes designed to protect prison officers and inmates by deterring attacks upon them, it would be improper for us to imply legislative intent that a prisoner's interpretation of the applicable statute, incorrect at the time of the offense, should be recognized as partially correct by retrospective application of a statutory amendment.

Certainly the guilty as well as the innocent are entitled to due process of the law; but an equally important function of this court is to uphold and enforce the law—exactly as enacted by the Legislature—for the protection of the innocent rather than to devote our efforts to ameliorating the punishment of the guilty at the risk of encouraging further crimes.

The decisions of the District Courts of Appeal which we follow are, and long have been, the established decisional law of this state. If we were to strike them down we would thereby strike a blow at law enforcement and at respect for the law.

From our examination of the record it appears that defendant was fairly tried, that the evidence supports the findings of the jury, and that the judgment as entered accords with the controlling law.

For the reasons above stated the judgment is affirmed.

Spence, J., McComb, J., and White, J., concurred.

PETERS, J., Concurring and Dissenting.—I agree with the majority opinion insofar as it holds that the evidence sustains the finding of guilt, and I further agree that there were no prejudical errors in the trial of that issue. But I am of the view that the portion of the proposed opinion that holds that Harmon is not entitled to have his punishment fixed under section 4500 of the Penal Code as it now reads is erroneous.

The majority opinion correctly points out that, when this crime (assault likely to produce bodily harm committed by one under a life sentence) was committed, and when Harmon was tried, convicted, and judgment was entered, section 4500 of the Penal Code made the death penalty mandatory. The majority opinion also correctly points out that while this appeal was pending, there became effective an amendment to section 4500 by which it is now provided that where, as here, the victim does not die as a result of the assault, the trier of the fact, in its discretion, may impose a penalty less than death.

The question thus presented is, under what statute is Har-

mon to be punished—the old severe one, or the one mitigating the punishment? The majority opinion holds that Harmon must be punished under the old superseded statute. With this I disagree. It is my conviction that under settled principles of interpretation Harmon is entitled to the benefit of the amended statute.

This conclusion follows from a consideration of the general law applicable to the repeal or amendment of penal statutes imposing punishment.

It is well settled that, where the old statute, in existence when the crime was committed, is repealed pending appeal, and there is no saving clause, all prosecutions not reduced to final judgment are barred. The accused, in such a situation, must go free. This is the rule at common law and is the rule in this state. (*Spears* v. *County of Modoc*, 101 Cal. 303 [35 P. 869].)

This same result follows where the old statute in existence when the crime was committed is amended, without a saving clause, pending appeal, so as to increase the punishment. In such a situation the offender cannot be punished under the new law because to do so would be *ex post facto*, and he cannot be punished under the old law, because it has been repealed without a saving clause. At common law, and under the law of this state, all prosecutions for acts committed before the amendment and not reduced to final judgment are barred. (*Sekt* v. *Justice's Court*, 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833].)

In both of the situations above described it is presumed that the Legislature intended to grant a legislative pardon. But a saving clause, such as is found in Government Code, section 9608, rebuts the presumption of an intent to pardon. In both of the situations above discussed, if there is a saving clause, the offender may be punished under the old law. This is so because the saving clause has expressed the intent that, even though the old statute has been repealed or amended, the offender is to be punished, and since the only law under which he can be punished is the old law, he is to be punished under that law.

The third situation when an amendment to the punishment provision of a penal statute is involved is where the old statute, in existence when the crime was committed, is amended pending appeal so as to mitigate the punishment. If there is no saving clause the weight of authority, and the rule in California, is that punishment must be imposed under the new

law. The majority opinion recognizes that this is the proper rule, and cites *Sekt* v. *Justice's Court,* 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833], in support of it. That case undoubtedly so held. At page 305 this court stated: ''In such a case the problem is not complicated by the prohibition against *ex post facto* laws, since it is well settled that beneficial legislation is not within the prohibition of the constitutional provision. . . . Where the later statute reduces the punishment the cases quite uniformly hold that the offender may be punished under the new law . . . [Citing many cases.] All these cases, and the cases cited in them, base their conclusion that the offender who commits an offense before the amendment of the statute imposing the lighter sentence gets the benefit of the lighter punishment, upon the ground that it must have been the intention of the Legislature that the offender should be punished, and, since he can be constitutionally punished under the new statute, that should be done.'' (See also *People* v. *Chessman,* 38 Cal.2d 166, 191 [238 P.2d 1001].)

This rule is well settled, even though its result is to give retrospective operation to the amendment mitigating punishment. The reasoning is that, without a saving clause, the offender cannot be punished under the old statute, and if he is to be punished at all, as the Legislature has clearly indicated, he must be punished under the new law. Therefore, the general rule that statutes should ordinarily be construed to operate prospectively, and should not be construed to operate retroactively, a principle codified as to penal statutes in section 3 of the Penal Code, is not applicable. That is so because the intent to operate retroactively can be spelled out of the amending statute, and its practical application.

The majority opinion holds that this common sense and well-settled rule does not apply when there is a saving clause. The saving clause relied upon is section 9608 of the Government Code. It provides: ''The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the . . . punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such . . . punishment is expressly declared by an applicable provision of law.'' It will be noted that this saving clause does not say a word about what statute shall apply to the offender—whether the old or the new. It simply expresses the intent that the offender shall be punished. How can a statute that simply expresses such an intent be distorted into an expression of intent that

the old statute shall apply? If the rule is that, where the amendment mitigates punishment and there is no saving clause, the amendment shall operate retroactively so as to apply the lighter punishment, how does such a saving clause change that rule to make the old law applicable? The simple answer is that it does not.

It is true that the majority opinion cites some appellate court decisions which so hold. They are: *In re Crane,* 4 Cal. App.2d 265, 266-267 [41 P.2d 179]; *People* v. *King,* 136 Cal. App. 717, 721 [29 P.2d 870]; *People* v. *Williams,* 24 Cal.App. 646, 650 [142 P. 124]; *People* v. *Davis,* 67 Cal.App. 210, 215 [227 P.2d 494]; *People* v. *Pratt,* 67 Cal.App. 606, 608 [228 P. 47]; *People* v. *Edwards,* 72 Cal.App. 102, 119 [236 P. 944]; *People* v. *Lindsay,* 75 Cal.App. 115, 121 [242 P. 87]; *People* v. *Fowler,* 175 Cal.App.2d 808, 812 [346 P.2d 792]; see also 45 California Jurisprudence 2d, Statutes, section 66, page 588.

All of these cases, and the holding in the majority opinion, are based, fundamentally, on an erroneous premise. They are based on the erroneous reasoning that, because the saving clause permits punishment under the old law where the statute is amended after conviction and pending appeal so as to *increase* the punishment, the same rule must be applied where the amendment *mitigates* the punishment. It is only by blind adherence to this concept that the appellate court decisions or the views accepted by the majority can be sustained. It is significant that all of the appellate court decisions are either based on this concept or simply cite each other.

In both situations, that is, where the amendment increases or decreases the punishment, we are required to ascertain the legislative intent. The saving clause tells us that the Legislature intended that the offender be punished, but it offers no clue as to what statute shall be applied. Where the amended statute increases the punishment the amended statute cannot constitutionally be applied to the punishment of crimes already committed, because of the constitutional inhibition against *ex post facto* laws. Therefore, it is obvious that the saving clause must be interpreted as disclosing an intent that the offender shall be punished under the old law because that is the only law, constitutionally, under which he can be punished. In such a situation the saving clause is the conclusive factor. But that is not so where the amendment mitigates the punishment. In such a situation the offender, constitutionally, can be punished under either the

old or the amended law. Now the saving clause is of no help at all. It simply tells us that the Legislature intended that the offender should be punished, but it gives no indication at all as to which statute shall apply. Thus, the reliance on the rule applicable where the amendment increases the punishment by the appellate courts in the cases cited above, and a similar reliance in the majority opinion, is unwarranted.

This brings us back to trying to ascertain the legislative intent. This is not an easy task. As was said by Judge Learned Hand in *United States* v. *Klinger*, 199 F.2d 645, 648: ''When we ask what Congress 'intended,' usually there can be no answer, if what we mean is what any person or group of persons actually had in mind. Flinch as we may, what we do, and must do, is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion. He who supposes that he can be certain of the result is the least fitted for the attempt.''

As difficult as it is to ascertain the legislative intent the court should not shirk its task by blindly following the so-called rules of construction, and by disregarding the realities of the situation before the court. The majority adheres strictly to the general rule of construction that, when there is nothing to indicate a contrary intent, it will be presumed that the Legislature intended a statute to operate prospectively and not retroactively. As to criminal statutes this rule is codified in section 3 of the Penal Code. But this rule of construction is not a straitjacket. It is not to be followed blindly in complete disregard of other factors that may give a clue to the presumed legislative intent. It is to be applied only when the presumed legislative intent cannot reasonably be ascertained from other factors. In the instant case there are considerations that indicate that the Legislature intended the amended statute to operate retroactively. This being so, the so-called rule of construction should not be followed.

In the instant case, we have two statutes—the old and the amended one—under either of which the offender may be punished. The Legislature has not indicated which statute shall apply. The only thing that supports applying the old law is the general rule of construction that an amended statute is presumed to operate prospectively and not retroactively, the rule relied upon in the majority opinion. But, as already pointed out, that rule is not inflexible. It does not apply where a contrary intent is reasonably ascertainable. We know, for

example, as already pointed out, that it has been disregarded in those situations where the amended statute, as here, mitigates the punishment and there is no saving clause. Since the saving clause adds nothing in determining which law shall be applied, why should the same rule not apply whether there is or is not a saving clause? It should.

The majority opinion disregards a most compelling consideration that indicates that the Legislature must have intended this statute to operate retroactively. That consideration is that, when the Legislature amended this law, it must have intended the new punishment to apply to all cases to which it can apply. The Legislature has considered the punishment that should be imposed for the offense in question. It has come to the conclusion that the new punishment fixed by the amendment is the proper punishment to be imposed for that offense. It certainly is reasonable to assume that the Legislature intended that the amended law, setting forth the punishment the Legislature now feels fits the crime, should apply to all cases to which it can constitutionally apply. There is no logical or rational reason to presume, as does the majority opinion, that the Legislature, in such cases, intended the old law to apply. Such a presumption can only be predicated on the theory that punishment is intended as vengeance against the wrongdoer. This violates all the modern theories of penology.

These views were forcefully expressed in a fairly recent New York case—*People* v. *Oliver,* 1 N.Y.2d 152 [134 N.E.2d 197, 151 N.Y.S.2d 367]. There, after holding that the defendant was entitled to the benefit of the mitigated punishment the court stated (p. 373 [151 N.Y.S.2d]): ''This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or treatment of criminal offenders is directed toward one or more of three ends: (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution. (See Michael & Wechsler on *Criminal Law and its Administration* [1940], pp. 6-11; note, 55 Col.L.Rev., pp. 1039, 1052.) A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends

of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts.''

For these compelling reasons, I believe that the presumption that amended laws are to operate prospectively and not retroactively has been rebutted, and that, for reasons already stated, a contrary legislative intent appears. In my opinion Harmon should be retried on the issue of penalty under the amended statute.

Gibson, C. J., and Traynor, J., concurred.