[Crim. No. 1274. First Appellate District, Division Two.—November 5, 1925.]

THE PEOPLE, Respondent, v. A. B. LINDSAY, Appellant.

[1] CRIMINAL LAW — EMBEZZLEMENT — VERDICT — EVIDENCE. — In this prosecution on a charge of embezzlement, the evidence showing that defendant, a real estate agent, while acting as the agent of the prosecuting witnesses in connection with the sale of certain real property, the purchase of other property, and the collection of rental therefrom, collected various amounts of principal and interest on a promissory note in favor of the prosecuting witnesses, but represented to them that the same had not been paid, that defendant collected several items of rental for which he did not properly account to the prosecuting witnesses, and that he made several erroneous and duplicate charges of indebtedness against the prosecuting witnesses and deducted same from the moneys collected by him, was sufficient to support the verdict of the jury finding defendant guilty.

[2] ID.—DATE OF EMBEZZLEMENT—EVIDENCE.—In such prosecution, the information properly charged that the embezzlement occurred on the date that defendant procured receipts from one of the complaining witnesses and purported to make with her a settlement in full, while concealing and misrepresenting the facts with relation to his collections and disbursements to her damage and loss; and the fact that at a later date her attorney made a demand upon defendant for the money due did not change the date of the embezzlement.

[3] ID.—OWNERSHIP OF MONEY—HUSBAND AND WIFE—EVIDENCE—IMMATERIAL VARIANCE.—In such prosecution, while the proof might have been fuller, it was sufficient to establish that the money embezzled was the property of the prosecuting witnesses, husband and wife, as alleged in the information; but the entire absence of such evidence would not have prejudiced defendant, as it was immaterial in the preparation of his defense whether the money was the separate property of the wife or property of the community.

[4] ID.—LAWFUL MONEY—CHECKS—PLEADING—EVIDENCE.—In such a prosecution, the judgment will not be reversed because of the fact that the information charges the receipt of lawful money of the United States, whereas the proof shows that some of the money had been received by check.

---

3.  See 10 Cal. Jur. 263.
4.  See 10 Cal. Jur. 262; 9 R. C. L. 1297.

[5] ID.—AMENDMENT OF STATUTE—LAW APPLICABLE—INSTRUCTIONS.—
In a prosecution for embezzlement, the court properly instructs
the jury upon the theory that the statute, as it existed at the
time of the commission of the offense, is the law to be applied,
notwithstanding that subsequent to the commission of the offense
the statute has been amended so as to ameliorate the punish-
ment.

(1) 17 C. J., p. 223, n. 42; 20 C. J., p. 486, n. 60. (2) 20 C. J.,
p. 427, n. 22 New, p. 482, n. 31 New. (3) 17 C. J., p. 287, n. 58;
20 C. J., p. 486, n. 60. (4) 16 C. J., p. 1063, n. 85; 17 C. J., p. 287,
n. 58. (5) 16 C. J., p. 69, n. 22, p. 70, n. 34.

APPEAL from a judgment of the Superior Court of Ala-
meda County. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

John W. Bantz, Peck, Bunker & Cole, W. B. Bunker and
Henry G. Tardy for Appellant.

U. S. Webb, Attorney-General, and Chas. A. Wetmore,
Jr., Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant
from a judgment entered upon a verdict of a jury finding
him guilty of embezzlement.

It is contended that the evidence is insufficient to support
the verdict in several particulars and also that there is a
variance between the information and the proof. At the
outset let us state that there are numerous conflicts in the
evidence and we shall not concern ourselves with these con-
flicts, but proceed upon the assumption that the jury re-
solved all conflicts against the defendant.

[1] The information charged that on or about November
24, 1922, and before July 11, 1923, in the county of Ala-
meda, state of California, the defendant was the clerk, agent,
servant, and bailee of Clara Hellesto and Emil Hellesto, her
husband, and by virtue of such employment came into pos-
session of the sum of $1,250, the personal property of the
said Clara and Emil Hellesto, and that defendant unlawfully

and fraudulently converted, embezzled, and appropriated said personal property to his own use.

The proof was that the defendant was a real estate agent in Oakland, California, and about June, 1920, sold a house on Miles Avenue in Oakland for Mrs. Hellesto. The purchaser, Mrs. Hayes, made a cash payment of $2,500 on this property, assumed a first mortgage and gave a promissory note for $1,200, secured by a deed of trust to Mrs. Hellesto. In July, 1920, Mrs. Hellesto purchased another house on Manila Avenue, Oakland. She paid $1,000 down and gave a note secured by a deed of trust for the balance, which note was payable at the Bank of Italy at the rate of $50 a month. Mrs. Hellesto arranged with the defendant to act as her general agent and collect the money upon the Hayes note and the rent from the property on Manila Avenue and to make the payments upon her note at the Bank of Italy, pay the taxes upon the Manila Avenue property and such other bills as he was authorized to pay and to pay the balance to her. The defendant received $250 as his commission upon the sale of the property to Mrs. Hayes, which sum was taken out of the initial payment. He also sold the Manila Avenue house to one Van Dyke and later Van Dyke deeded the property back to Mrs. Hellesto and continued to occupy it as a tenant, paying the sum of $1,025 to defendant as the agent of Mrs. Hellesto. Defendant also rented this house to one Cardinet in 1922 for six months at the rate of $75 a month and to a tenant named Genelly for eleven months at $75 a month. The defendant collected money from these various sources for the account of Mrs. Hellesto from July, 1920, to November 24, 1922. In November, 1922, Mrs. Hellesto, not having received an accounting of the proceeds of the Hayes note, asked defendant if Mrs. Hayes had made any more payments upon it. The defendant replied that she had not and asked Mrs. Hellesto to come to his office. She did so on November 24, 1922, and was told that there was then due $542 upon the Hayes note, but that defendant would give Mrs. Hellesto $100 if she needed money and take an assignment of the Hayes note and remit the balance due thereon in monthly payments. At that time the entire amount of the Hayes note had been paid, but Mrs. Hellesto, believing defendant's statement to the contrary, assigned the note to him, which assignment recited a consideration of $542 paid

to Mrs. Hellesto and her husband by defendant. Defendant then gave Mrs. Hellesto his check for $100 and his promissory note for $442, as a payment of this Hayes note, although he had collected the full amount thereof from Mrs. Hayes. Before Mrs. Hellesto left defendant's office, defendant's wife, who assisted him in his business, entered, and, upon her suggestion, defendant stated that there was about $242 due him for payments upon the Manila Street property and had Mrs. Hellesto indorse that amount as paid upon the back of the note which he had given her. He then had Mrs. Hellesto sign a receipt for $342, received upon the note for $442, leaving a balance of about $99 due thereon. It is to be observed that by these maneuvers defendant secured credit twice for his $100 check. He credited himself with it as a payment upon the Hayes note before he gave his note for the balance, which he said was due—$442. Later, he included it in a receipt for money to apply upon that $442 note. Apart from this, he had two indorsements acknowledging the same amount of money—one on the back of the note and another in a separate receipt. Apart from this, he had falsely represented that the Hayes note had not been paid, and had thus retained for himself the money paid upon it and induced Mrs. Hellesto to accept his unsecured note for this amount and to assign to him a note secured by deed of trust. By this "juggling" of accounts Mrs. Hellesto was led to believe there was nothing more due her on the note and in the statement compiled by the defendant and his wife and used by them in the trial of this case, Mrs. Hellesto is given credit for no further sum with reference to this transaction. It thus appears that in this one transaction, in which, according to the defendant's statement, he was to pay Mrs. Hellesto $542, he gave her $100 and credit for $242 owed by her, a total of $342, making a balance due to her of about $200. In addition to this, it appears from the evidence that he collected over $100 interest upon the Hayes note for which he never accounted to Mrs. Hellesto. In his statement used at the trial he mentions only $1,250 as being received upon this note and makes no attempt to account for the interest which he received and which amounted to over $100. Defendant accounted for only $800 rent received from the tenant Van Dyke and for $675 received from Genelly. Van Dyke testi-

fied that he had paid $1,025 to the defendant for the account of Mrs. Hellesto and Genelly testified that he had paid $825. The jury believed the testimony of these men and this constituted a further embezzlement of $375. In defendant's accounting he charged Mrs. Hellesto with an item of "Check to Mrs. Hellesto $33.90." Defendant claims this item as an offset to the money he collected for Mrs. Hellesto. Mrs. Hellesto stated that this check for $33.90 was given her as change for one hundred dollars in currency which she had given to defendant to pay a bill of $66.10 and this is corroborated by documentary evidence in the record. This false entry was another embezzlement.

There is also an item: "Receipt from Mrs. Hellesto $163." Defendant credited himself with this amount in accounting to Mrs. Hellesto. She testified she signed this receipt at the request of the defendant, but that she received no money at that time, but was told by defendant that he had paid this amount upon the Van Pelt paint bill. In another place in the account defendant credited himself with the amount of this bill, thus making two credits for the same item.

If the jury believed Mrs. Hellesto and the other witnesses on behalf of the People, as it had a right to do, it could only conclude that the defendant had misrepresented many things to Mrs. Hellesto and had made false entries in the statement of account and had contrived, by duplication of receipts and misrepresentations as to the amount of money he had collected to defraud Mrs. Hellesto of many hundreds of dollars. Besides the evidence regarding the specific items mentioned Mrs. Hellesto testified that defendant had collected about $3,600 for her and had accounted for but $2,400.

It is also to be remarked that the testimony of the defendant, in many respects, is unconvincing. Upon his preliminary examination he stated that in his settlement with Mrs. Hellesto he had represented that the Hayes note in her favor was unpaid at a time when he had collected the full amount thereof. At the trial of the action he contradicted this testimony and insisted that he had told Mrs. Hellesto that the Hayes note had been paid in full. No reasonable explanation is given of the fact that he required an assignment of it to himself. If it had been paid in full and Mrs. Hellesto was so informed, it was only necessary to mark the

note paid and return it to the maker. But if the proceeds thereof had been collected by the defendant and not accounted for and the facts had been misrepresented to Mrs. Hellesto as she testified, the reason defendant desired the assignment becomes apparent.

[2] We see no merit in appellant's contention that the proof does not correspond with the allegation in the information that the embezzlement occurred on the twenty-fourth day of November, 1922. It was on that date that defendant procured receipts from Mrs. Hellesto and purported to make with her a settlement in full, while concealing and misrepresenting the facts with relation to his collections and disbursements to her damage and loss as hereinbefore set forth. It is true that at a later date Mrs. Hellesto's attorney made a demand upon defendant for the money due her, but this does not change the date of the embezzlement.

[3] Appellant complains that there is a variance between the information and the proof in that the information alleges the money was the property of Mrs. Hellesto and her husband and that the evidence does not establish that the husband had any interest in the money. Mrs. Hellesto testified that she made the assignment of the Hayes note for herself and her husband and the assignment recites that this note was executed and delivered to Mrs. Hellesto and her husband. There is also in evidence the complaint in a civil action wherein Mrs. Hellesto and her husband sought to recover the money due them from defendant. While the proof might have been fuller upon this subject, it is, nevertheless, sufficient, and even its entire absence would not prejudice the defendant, as it would be immaterial in the preparation of his defense whether the money was the separate property of Mrs. Hellesto or property of the community. He was misled in no way in the trial of the action.

[4] There are a number of minor objections made which are too trifling to be considered in detail, such as the objection that the information charged the receipt of lawful money of the United States and the proof showed that some of the money had been received by check. Judgments are no longer reversed for such technical inaccuracies.

Appellant complains of the refusal of the trial court to give certain instructions. Most of these were refused upon the ground that the jury was fully instructed as to the mat-

ters covered thereby and an examination of the instructions as a whole confirms this position.

[5] The only other contention made, while presented as an attack upon certain instructions of the court, is that section 487 of the Penal Code, prior to its amendment in 1923, making an embezzlement of a sum in excess of $50 a felony, is not applicable here. In 1923, this section was amended by raising the value of the property from $50 to $200. The instructions of the court proceeded upon the theory that the statute, as it existed at the time of the commission of the offense, was the law to be applied. Section 329 of the Political Code of California meets the situation. It reads as follows: "The repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act." The cases of *People v. Pratt,* 67 Cal. App. 606 [228 Pac. 47], *People v. Davis,* 67 Cal. App. 210 [227 Pac. 494]; *People v. Vincent,* 95 Cal. 425 [30 Pac. 481], and *People v. McNulty,* 93 Cal. 427 [26 Pac. 597, 29 Pac. 61], are in point. Appellant contends, however, that a different rule should apply where the amending statute ameliorates the punishment. No authorities are cited in support of this contention and such a situation is not excepted from the general rule stated in section 329 of the Political Code.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 1, 1925, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 4, 1926.