TERRITORY OF HAWAII *v.* PATRICK YIM,
ALSO KNOWN AS HENRY AKINA.

No. 2759.

ARGUED JANUARY 18, 1952.      DECIDED JANUARY 25, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The defendant, plaintiff in error, was convicted by a jury of embezzlement of money entrusted to him by A. K. F. Ing.

According to the testimony of Ing, the complaining witness, he was introduced to the defendant by a friend, one Alec Kong. The defendant and Ing became very friendly and defendant was accepted as a tenant of certain premises in Kaimuki owned by Ing. After defendant became Ing's tenant he approached Ing upon the subject of investing money in the pinball game business. Ing refused,

but after some discussion and questions by defendant as to what business Ing would be interested in, Ing suggested he would be interested in the retail shoe business. Meantime the defendant had ingratiated himself with Ing by buying three suits of clothes and had impressed Ing with his wealth by showing him a large sum of money consisting of twenty dollar bills. At defendant's suggestion, it was agreed that the defendant would put up $23,000 and Ing $17,000 and form a partnership for the retail shoe business which Ing was to manage. Ing sold property at Kaimuki for $17,000, receiving $9,000 in cash, and then mortgaged real property to the Bank of Hawaii for an additional $8,000, making a total of $17,000. Ing took the money home to his wife. On a night in February, 1948, defendant came to Ing's home. There Ing, in the presence of Mrs. Ing, gave him $17,000 which was to be used in the shoe business. Defendant was to procure partnership papers for signature. After payment of the money, according to the complaining witness, defendant and Ing drove to a pier on the Honolulu waterfront; defendant had a gun with him; he got out of the car and when he came back without the money Ing asked him about the "business papers," the partnership papers, to which the defendant replied, "the business papers are not ready. You know we have to make a change. Your wife has ¼ share. It will be ready tomorrow." (It appeared from Ing's testimony that he regarded his wife as a half owner in the $17,000 although title to the real property was in his own name and the loan at the Bank of Hawaii was made to him individually.)

Without going into details of the testimony as to the run around that the defendant gave the complaining witness when he was questioned on a number of occasions regarding the partnership business and the money, suffice it to say that the defendant never produced any partnership

papers and never returned the money nor made any explanation.

That Ing turned over $17,000 to defendant and defendant agreed to furnish $23,000 to go into the retail shoe business is supported by the testimony of Ing and his wife; that the defendant and Ing were going into the shoe business is supported by several independent witnesses who testified as to conversations with the defendant and Ing, one of whom was offered a position as a shoe salesman in the proposed store. There is ample evidence to support a finding that Ing entrusted to defendant $17,000 to be used in establishing a shoe business and that defendant embezzled same.

The defendant did not take the stand and his only witness was Alec Kong, a professional gambler. Kong testified that Ing advised him he desired "to invest some money in that Chinese gambling syndicate which I have shares in." He testified that he told Ing that investing in gambling was not good for him because of his "being a working guy." Kong then testified that Ing asked him about "fleecing" and in response to this inquiry Kong made arrangements to have the complaining witness and the defendant meet because according to Kong, the defendant was a man who knew about fleecing; apparently defendant justified Kong's statement.

The defendant's first assignment of error is that the testimony of witness Midkiff to the effect that the complaining witness was given the proceeds of a mortgage loan of $8,000 was based on hearsay inasmuch as the witness did not remember seeing the money passed to Ing. The testimony of this witness showed that there was a note and mortgage signed by Ing for $8,000 at the Bank of Hawaii and that Ing made payments on the same. There is also in evidence the certified copy of the mortgage which shows that such a loan was made by the Bank of Hawaii to Ing

individually, in addition to Ing's own testimony. So if it were error to permit the witness to testify because he didn't actually see the money passed to the complaining witness, it was harmless error as there is ample evidence that shows conclusively that such a mortgage loan was made to Ing personally.

Plaintiff in error relies chiefly on the failure of the court to give a directed verdict and to instruct the jury that the Territory must prove ownership of the $17,000 in Ing. The plaintiff in error claimed that the proof showed joint ownership of the money alleged to have been embezzled and therefore there was a fatal variance between the allegations as to the ownership of the money alleged to have been embezzled and the proof and, further, as to the amount alleged and the proof. Several assignments of error relate to these claims but they can be discussed together.

As embezzlement is purely a statutory offense designed to meet and obviate certain defects in the law of larceny, naturally there is a wide difference in the scope and wording of the statute in various states defining embezzlement.

Our own statute (§ 11240, R. L. H. 1945) provides: "If any person who is intrusted with, or has the possession, control, custody or keeping of a thing of value of another, by the consent or authority, direct or indirect, of such other, without the consent and against the will of the owner, fraudulently converts or disposes of the same, or attempts so to convert or dispose of the same, to his own use and benefit, or to the use and benefit of another than the owner or person entitled thereto, he is guilty of the embezzlment of that thing." An Amendment of 1945 covers embezzlement by a partner or co-owner.

The crime is against the Territory and not against the owner of the property embezzled. Obviously, when one is entrusted with the property of another and misappropri-

ates it to his own use or to the use of another, from a criminal standpoint it is immaterial whether the property belongs to X, Y or Z or to any two or more of them so far as the commission of a crime is concerned. There is no statutory requirement to describe ownership but a fair trial requires the indictment set forth the offense with reasonable certainty. Thus the purpose of alleging ownership of another is primarily to negate the ownership by the defendant, to give the defendant notice so that he will not be misled in the preparation for trial and to constitute a bar to other proceedings against the defendant for the same offense.

The contention of defendant as to "joint" ownership of the $17,000 is based on the statement of Ing that his wife had a half interest in the $17,000. Exactly what type of interest was in Mrs. Ing does not appear other than this statement. According to the records of the sale and the mortgage of his real property, full title was in Ing and, furthermore, the control of the property was in Ing and he was authorized to deal with it when he turned over the money to the defendant.

The authorities are almost unanimous that the title of the bailor is immaterial, that he may have a qualified title; in fact, as against certain persons he may have no title at all, as the money of a thief may be embezzled. (Burdick, *Law of Crime,* § 579; *Wharton's Criminal Law,* 12th ed., §§ 1274, 1287.) The gist of the offense is the breach of trust by one entrusted with property by another, regardless of extent of title of the bailor.

"* * * Embezzlement contemplates the misappropriation of the property of another. It is not necessary, however, that the title of the one whose property is embezzled be an absolute one, a qualified ownership with the right to possession and control of property is sufficient. * * *" (18 Am. Jur. § 9, p. 575.)

It is true that the decisions of the courts in a few of the States regarding the proof of ownership of the property embezzled seem to be unusually refined when one looks at the purpose of the law. Several authorities have been cited holding there is a fatal variance between the indictment and the proof where the indictment charged embezzlement of moneys belonging to the wife and the evidence showed joint ownership in husband and wife.

However, looking at the purpose of the Act and giving ample protection to a defendant, such construction is not warranted and there is ample authority to this effect.

In *State* v. *Chapin,* 74 Ore. 346, 144 Pac. 1187, in discussing the similarity of larceny and robbery with embezzlement, the court in quoting from a previous decision of the Oregon court stated: " 'The only thing essential in either case [larceny or robbery] seems to be an averment which shall show conclusively that the property does not belong to defendant. And courts have shown a disposition to allow the proof of any sort of interest in or right to the custody of the property to be sufficient proof of ownership.'

"In the present case Mrs. Grace had ample authority at all times to receive the money from the defendants. She had the right to the custody thereof. If they had accounted to her according to the nature of their trust, it would have been a full compliance with the law. There was nothing in the allegation of ownership of the funds to mislead the defendants or to render it doubtful as to what was the charge against them."

In *People* v. *Lindsay,* 75 Cal. App. 115, 242 Pac. 87, where the indictment alleges joint ownership and the evidence showed that the husband did not have any interest in the money, the court stated that this "would not prejudice the defendant, as it would be immaterial in the preparation of his defense whether the money was the separate property of Mrs. Hellesto or property of the commu-

nity. He was misled in no way in the trial of the action."

*Coney* v. *State,* 272 S. W. 197 (Texas, 1925), held that an indictment for embezzlement need allege only the special owner, not the real owner. The court stated: "The rules in theft cases touching ownership apply to cases of embezzlement. * * * Embezzlement is a species of theft, differing from that offense in the manner in which the possession of the property is acquired. In embezzlement, the possession is in the alleged offender with the consent of the owner. The offense consists in its fraudulent conversion against the consent of the owner. The ownership, as in theft, however, may be in a special owner. * * * In embezzlement, as in theft, where the special owner is named in the indictment, it is unnecessary to name the real owner. * * *"

The defendant's contention is not sound that the prosecution must prove beyond a reasonable doubt all the allegations of the indictment, including the embezzlement of the $17,000 belonging to Ing. The authorities are unanimous that the embezzlement of a lesser amount is sufficient proof. Even assuming that Ing's possessory rights were not sufficient to support the charge of embezzlement by defendant of moneys delivered to him by Ing, his ownership of $8,500 of the $17,000 alleged to have been embezzled by the defendant would be sufficient to sustain conviction. (18 Am. Jur. 604, § 53.)

There was no error in the refusal of the trial judge to give defendant's so-called stock instructions which he alleges as error, namely, the burden of proving beyond a reasonable doubt, etc., as such points are amply taken care of by the instructions given.

The judgment is affirmed.

*O. P. Soares* (also on the briefs) for plaintiff in error.

*A. R. Hawkins,* Public Prosecutor, City and County of Honolulu (also on the brief), for defendant in error.