# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
RICKY PRUDHOLME,
Defendant and Appellant.

S271057

Fourth Appellate District, Division Two
E076007

San Bernardino County Superior Court
FWV18004340

June 26, 2023

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero and Justices Liu, Kruger, Groban, Jenkins, and Evans concurred.

PEOPLE v. PRUDHOLME

S271057

Opinion of the Court by Corrigan, J.

Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950) became effective on January 1, 2021 and reduced the maximum length of probation for most felonies to two years. (See Pen. Code, § 1203.1, as amended by Stats. 2020, ch. 328, § 2.) We must decide whether this provision applies retroactively to cases not yet final on appeal and, if so, the proper remedy for applying the new law to an existing plea agreement that provided for a longer probationary term. We hold Assembly Bill 1950 applies retroactively to nonfinal cases and the proper remedy is to modify the probationary term to conform with the new law while maintaining the remainder of the plea agreement. Accordingly, we modify the judgment to reduce the length of probation from three years to two and otherwise affirm the judgment.

## I. BACKGROUND

In November 2018, defendant Ricky Prudholme and two others were seen loading items from a commercial loading dock into two pickup trucks. As they began to drive off, employees of the business blocked the way. Defendant tried to evade them but hit an obstruction. He got out of his truck and began yelling at the employees, claiming he injured his back and threatening to sue them. Police arrested defendant and his cohorts. The trio had loaded their trucks with over $4,100 worth of electronic equipment, which was recovered. All three were originally

1

charged together with one count of second degree robbery.[1] The codefendants are not part of this appeal.

Proceedings were suspended for a time because defense counsel declared a doubt as to defendant's competence.[2] The court found him competent several months later and reinstated proceedings. The record reflects that defendant was 58 years old at the time of the crime. His only prior offense was a misdemeanor vandalism conviction in 2000. The maximum exposure for a second degree robbery is five years in state prison.[3] Pursuant to a negotiated disposition, the robbery charge was dismissed and defendant pled to second degree burglary, a wobbler punishable by a prison term of 16, 24, or 36 months, or up to one year in the county jail.[4] The maximum available probationary term was five years. The parties agreed to three years of probation. Conditions required defendant to serve a year in the county jail, which he had already completed; submit to a search of his person and residence; stay away from the victim business; and otherwise obey all laws. Defendant filed a notice of appeal, the bases of which were not set out in the notice.

While that appeal was pending, the Legislature enacted Assembly Bill 1950. (See Stats. 2020, ch. 328, § 2, amending Pen. Code, § 1203.1.) Defendant argued the new law applied to

---

[1] See Penal Code sections 211, 212.5, subdivision (c).

[2] See Penal Code section 1368.

[3] Penal Code section 213, subdivision (a)(2).

[4] See Penal Code sections 459, 460, subdivision (b), 461, subdivision (b), and 1170, subdivision (h)(1). "A wobbler is a crime that can be punished as either a felony or a misdemeanor." (*In re G.C.* (2020) 8 Cal.5th 1119, 1122, fn. 1.)

him retroactively and required his probation term be reduced to two years but that the remainder of the plea agreement should remain in place. The Court of Appeal agreed the probation limit applied to defendant retroactively but that *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*) required the case be remanded to the trial court to "permit the People and trial court an opportunity to withdraw from the plea agreement." (*People v. Prudholme* (Aug. 26, 2021, E076007) [nonpub. opn.].) We granted defendant's petition for review.

## II. DISCUSSION

### A. *Probation and Assembly Bill 1950*

Following a conviction, the court may release certain offenders on probation. "Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) A grant of probation is "qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither 'punishment' (see [Pen. Code,] § 15)[5] nor a criminal 'judgment' (see [Pen. Code,] § 1445). Instead, courts deem probation an act of clemency in lieu of punishment [citation], and its primary purpose is rehabilitative in nature [citation]." (*People v. Howard* (1997) 16 Cal.4th 1081, 1092.)

---

[5] Penal Code section 15 defines a crime or public offense as "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either [*sic*] of the following punishments," specifying death, imprisonment, fine, removal from office, or "[d]isqualification to hold and enjoy any office of honor, trust, or profit in this State."

The Legislature has declared "that the provision of probation services is an essential element in the administration of criminal justice." (Pen. Code,[6] § 1202.7.) A primary goal of probation is to ensure the safety of the public through the enforcement of court-ordered conditions. A number of factors bear on a decision to grant probation. The sentencing court considers the nature of the offense; the needs of the defendant; the loss to the victim; and the interests of justice, which include punishment, reintegration of the offender into the community, and enforcement of probation conditions. (See *ibid.*; see also Cal. Rules of Court, rule 4.414.) "If the court determines that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be served," it may place the defendant on probation. (§ 1203, subd. (b)(3).) A court may impose probationary conditions it determines "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).) "Although the Legislature has directed in some circumstances that probation be unavailable or limited, in most circumstances the trial court has broad discretion to choose probation when sentencing a criminal offender." (*People v. Moran* (2016) 1 Cal.5th 398, 402, fns. omitted; see § 1203, subds. (e), (k).)

Before Assembly Bill 1950 amended section 1203.1, a "court could impose felony probation for a period 'not exceeding the maximum possible term of the sentence,' except 'where the

---

[6] Subsequent statutory references are to the Penal Code unless noted.

maximum possible term of the sentence [was] five years or less,' in which case probation could [not] 'continue for . . . over five years.' " (*People v. Forester* (2022) 78 Cal.App.5th 447, 451, quoting former § 1203.1, subd. (a).)[7] The new two-year probation limit of Assembly Bill 1950 does not apply to violent felonies defined in section 667.5, subdivision (c), offenses which include "specific probation lengths within its provisions," or to certain theft or financial crimes exceeding a loss of $25,000. (§ 1203.1, subd. (*l*)(1) & (2).)[8] None of these exceptions apply here.

According to the bill's author, the reduction of the maximum probation term for most offenses was based on research showing "that probation services, such as mental health care and addiction treatment, are most effective during the first 18 months of supervision" and "that providing increased supervision and services earlier reduces an individual's likelihood" to reoffend. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg Sess.) as amended June 10, 2020, p. 4.) Additional research cited by bill proponents suggested " 'that the maximum time needed to engage probationers in behavior change and reduce the likelihood of reoffending is no more than two years, while also

---

[7] "Assembly Bill No. 1950 also amended section 1203a to limit probation terms to one year for most misdemeanor offenses. (Stats. 2020, ch. 328, § 1.)" (*People v. Forester, supra,* 78 Cal.App.5th at p. 452, fn. 3.)

[8] Effective January 1, 2022, the Legislature amended section 1203.1 to eliminate an administrative fee for the collection of victim restitution ordered as a condition of probation. (See Stats. 2021, ch. 257, § 22.) That provision is not before us.

creating incentives for individuals to engage in treatment and services early on.' " (*Id.* at p. 5.) The bill's author urged that it "creates reasonable and evidence-based limits on probation terms, while lowering costs to taxpayers, allowing for the possible investment of savings in effective measures proven to reduce recidivism and increasing public safety for all Californians. The bill also supports probation officers in completing the duties of their job more effectively, by making their caseloads more manageable." (*Id.* at p. 4.) A report of the Assembly Committee on Public Safety also noted that "[i]f the fact that an individual is on probation can increase the likelihood that they will be taken back into custody for a probation violation that does not necessarily involve new criminal conduct, then shortening the period of supervision is a potential avenue to decrease individuals' involvement in the criminal justice system for minor infractions." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, p. 5.)

## B. *Assembly Bill 1950 Applies Retroactively to All Nonfinal Cases*

Defendant contends Assembly Bill 1950 applies to him retroactively because it went into effect while his case was pending on appeal and, thus, not final. The Attorney General agrees, as do we.

" 'It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise.' [Citations.] The Penal Code provides that '[n]o part of it is retroactive, unless expressly so declared.' (§ 3.)" (*Stamps, supra,* 9 Cal.5th at pp. 698–699.) It is undisputed that both the Legislature and the electorate

(sometimes hereafter "enactors") have the power, subject to constitutional limitations, to declare that an amendment is to apply retroactively. (*Ibid.*) A difficulty arises when enactors fail to express a clear intention on that subject.

*In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) involved just such a case. A new statute reduced the prison term for the defendant's offense but made no express statement as to whether that reduction should apply retroactively. Previous Court of Appeal cases had held "the old law should continue to operate as to past acts, so far as punishment is concerned." (*Id.* at p. 747.)[9] *Estrada* noted and disapproved those cases. (See *Estrada*, at p. 748.) It reasoned that the prospective application provision of section 3 "simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent. In the instant case there are, as

_____

[9]     See *People v. Fowler* (1959) 175 Cal.App.2d 808, 812; *In re Crane* (1935) 4 Cal.App.2d 265, 266–267; *People v. King* (1934) 136 Cal.App. 717, 721; *People v. Lindsay* (1925) 75 Cal.App. 115, 121; *People v. Edwards* (1925) 72 Cal.App. 102, 119; *People v. Pratt* (1924) 67 Cal.App. 606, 608; *People v. Davis* (1924) 67 Cal.App. 210, 215; *People v. Williams* (1914) 24 Cal.App. 646, 650.

will be pointed out, other factors that indicate the Legislature must have intended that the amendatory statute should operate in all cases not reduced to final judgment at the time of its passage." (*Estrada*, at p. 746.)

*Estrada* explained that in such a situation, the problem "is one of trying to ascertain the legislative intent — did the Legislature intend the old or new [punishment] statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors." (*Estrada, supra,* 63 Cal.2d at p. 744.) *Estrada* held that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id.* at p. 745.)

*Estrada* involved an amendment that reduced the prison term the defendant was serving. However, as noted, a grant of probation is generally not considered punishment but an act of leniency aimed at reforming the defendant, reducing recidivism, and securing restitution to the victim. The amendment in *Estrada* reduced his term of incarceration, not a length of probation. As a result, that case is not directly on point. When enacting Assembly Bill 1950, the Legislature did not express an

intent with regard to retroactivity, nor did it decrease the punishment for an offense. The question here, then, is the same as in *Estrada*: Despite its silence regarding retroactive application, does the new statutory language and the history of its enactment by "necessary implication" lead to an "inevitable inference" that the Legislature "must have intended" to reduce the available probationary period "to every case to which it constitutionally could apply"? (*Estrada, supra,* 63 Cal.2d at pp. 744, 745.) We conclude that the Legislature must have so intended.

While placing a defendant on probation itself is deemed an act of clemency, the court may impose various conditions on the probationary grant. These include the imposition of a jail term, the suspension of a further jail or prison sentence, and the payment of a fine or victim restitution. In addition, the court may require the probationer to submit to a search of his home, car, person, electronic devices and social media accounts. Probation conditions may restrict where the defendant can go, with whom he can associate, where he lives and whether he can move or leave the county. He may be required to wear a device that continuously monitors his whereabouts. While probation conditions can serve rehabilitative ends, they can also be invasive and restrictive. Their violation can lead to a return to jail or prison, without the right to a jury trial on the question of the violation or the commission of a new offense. (See *People v. Sims* (2021) 59 Cal.App.5th 943, 959–960 (*Sims*).)

Although probation is not considered a traditional form of punishment, in light of these restrictions on personal liberty contemplated by the imposition of probation, we conclude the rationale of *Estrada* applies equally here. *Estrada* concluded that a reduction of punishment reflected a legislative conclusion

that the previous term of incarceration was too lengthy, and the new shorter term was sufficient. A similar inference may be made here. By noting the significant impacts probation places on a defendant's liberty interests, along with the perceived practical advantages and increased efficacy achieved by reducing the probationary term, the Legislature clearly indicated an intent to reduce those impacts and achieve those advantages as expeditiously and economically as possible. It concluded that, as a matter of policy, the longer probationary terms previously allowed were unduly costly and counterproductive, and that a reduced maximum probationary term serves the public interest. (See discussion, *ante*, at pp. 5–6.) An analysis by one legislative committee noted studies which "argue that rather than being rehabilitative, the experience of probation can actually increase the probability of future incarceration . . . . Scholars argue that the enhanced restrictions and monitoring of probation set probationers up to fail, with mandatory meetings, home visits, regular drug testing, and program compliance incompatible with the instability of probationers' everyday lives." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950, *supra*, as amended May 6, 2020, p. 5.)

As a result, there is adequate support for the conclusion that the Legislature "must have intended" to reduce the available probationary period in "every case to which it constitutionally could apply." (*Estrada, supra,* 63 Cal.2d at p. 745.) As *Sims* reasoned, "by limiting the maximum duration a probationer can be subject to such restraint, Assembly Bill No. 1950 has a direct and significant ameliorative benefit for at least some probationers who otherwise would be subject to additional months or years of potentially onerous and intrusive

probation conditions." (*Sims, supra,* 59 Cal.App.5th at p. 959; see *People v. Burton* (2020) 58 Cal.App.5th Supp. 1, 15–16.)

Because defendant's case was still pending on appeal when Assembly Bill 1950's amendment went into effect, the new law applies retroactively to him. *Estrada* involved a conviction after trial. It concerned one simple question: When the Legislature reduced punishment, what did it intend with regard to retroactivity? In answering that question *Estrada* was not called upon to grapple with legislation reflecting other policy considerations, like the modification of a plea bargain. In the context of a plea agreement, deciding that a statute applies retroactively "does not answer the [separate] question of *how* that statute should be applied." (*Stamps, supra,* 9 Cal.5th at p. 700.) We now turn to that inquiry.

## C. *The Appropriate Remedy*

Defendant contends the proper retroactive application of Assembly Bill 1950 to a probationary term bargained for in a plea agreement is to simply reduce the length of probation to that now specified under the current law while leaving the remainder of the plea bargain intact. The Attorney General argues the proper procedure would be to remand to the trial court to allow the parties to renegotiate a resolution in light of the newly applicable alternatives. Under the particular facts here, we agree with defendant.

### 1. *Plea Agreements, Section 1192.5,* Stamps *and* Harris

When parties enter a plea bargain, each side negotiates to gain a benefit. The prosecution most often agrees to a term that is less than the defendant's maximum exposure, obviating the need for a trial and thus lessening the burden on victims,

witnesses and the system itself while providing the certainty of a conviction. As here, the defense often achieves the benefit of counts being dismissed or reduced and gains the protection of a more limited exposure to what would otherwise be the risk of harsher punishment. The court may be actively involved in the negotiations and, in any event, must approve the plea agreement, making it the ultimate arbiter of whether the disposition is fair and appropriate. (See *People v. Segura* (2008) 44 Cal.4th 921, 929.) "Plea negotiations and agreements are an accepted and 'integral component of the criminal justice system and essential to the expeditious and fair administration of our courts.' [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments." (*Ibid*.)

Section 1192.5 provides, with exceptions not applicable here, that "[u]pon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, . . . the plea may specify the punishment . . . and may specify the exercise by the court thereafter of other powers legally available to it." (§ 1192.5, subd. (a).)[10] Upon acceptance of the agreement by the parties and approval by the court, a defendant generally "cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b).) The court, however, may "withdraw its approval in the light of further consideration of the matter" (§ 1192.5, subd. (c)), in

[10] Section 1192.5, subdivision (a) has recently been amended to modify the offenses which are excluded from its provisions. (See Stats. 2022, ch. 197, § 19.) This amendment did not affect the application of the statute to defendant's offense.

which case defendant may withdraw his plea. (See § 1192.5, subd. (d).)

"The statutory scheme contemplates that a court may initially indicate its approval of an agreement at the time of the plea but that 'it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter . . . .' (§ 1192.5.) 'The code expressly reserves to the court the power to disapprove the plea agreement' up until sentencing. [Citation.] 'In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society . . . .' " (*Stamps, supra,* 9 Cal.5th at pp. 705–706; see *In re Alvernaz* (1992) 2 Cal.4th 924, 941.) "The court's authority to withdraw its approval of a plea agreement has been described as 'near-plenary.' " (*Stamps*, at p. 708.)

*Stamps*, as here, involved the intersection of this statutory scheme of plea bargaining and the retroactivity rule of *Estrada*. Stamps, who faced a potential "third strike" sentence of 25 years to life, agreed to a plea bargain imposing a nine-year sentence, which included a mandatory five-year enhancement for a prior conviction of a serious felony. (§ 667, subd. (a); see *Stamps, supra,* 9 Cal.5th at p. 693.) At the time the plea was negotiated, "a fundamental assumption underlying the plea bargain" (*People v. Collins* (1978) 21 Cal.3d 208, 215 (*Collins*)) was that the sentencing court could not strike such an enhancement. While that case was on appeal, the Legislature enacted Senate

Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393) (Stats. 2018, ch. 1013), which "removed provisions that prohibited a trial court from striking a serious felony enhancement in furtherance of justice under section 1385." (*Stamps*, at p. 700.)[11]

The defendant argued his case should be remanded to allow the trial court to exercise its discretion whether to strike the enhancement, potentially reducing his agreed-upon prison term of nine years to four. *Stamps* noted, however, that "[e]ven when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term." (*Stamps*, *supra*, 9 Cal.5th at p. 700.) *Stamps* reasoned that "it is not enough for defendant to establish that the amended section 1385 applies to him retroactively under *Estrada* in order to receive the remedy he seeks. In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385. We are not persuaded that the Legislature intended this result." (*Id.* at p. 701.)

With respect to legislative intent, *Stamps* observed that the "Legislature may have intended to modify the sentencing scheme, but the legislative history does *not* demonstrate any intent to overturn existing law regarding a court's lack of

---

[11] Section 1385 sets out the circumstances in which a court may dismiss an action or enhancement "in furtherance of justice." (§ 1385, subd. (a).)

authority to unilaterally modify a plea agreement.  Indeed, none of the legislative history materials mention plea agreements *at all*."  (*Stamps, supra,* 9 Cal.5th at p. 702.)  *Stamps* continued: "Senate Bill 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements.  Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision.  Its action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Ibid.*)

In this context, *Stamps* concluded a limited remand was appropriate to allow the defendant "the opportunity to seek the court's exercise of its section 1385 discretion."  (*Stamps, supra,* 9 Cal.5th at p. 707.)  If the court were inclined to exercise its discretion to strike the enhancement, "such a determination would have consequences to the plea agreement."  (*Ibid.*)  The court may withdraw its prior approval of the plea agreement because "[t]he court's exercise of its new discretion to strike the serious felony enhancement, whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement."  (*Id.* at p. 708.)  Further, barring the prosecution's agreement to reduce the agreed-upon sentence, " 'the prosecutor is entitled to the same remedy as the defendant — withdrawal of assent to the plea agreement.' "  (*Id.* at p. 707.)  *Stamps* directed the defendant "should be allowed to make an informed decision whether to seek relief on remand."  (*Id.* at p. 708.)

Section 1192.5 imposes a limitation on the court. While the enactors themselves retain the power to amend relevant statutes in a manner that permits modification of previous plea agreements, in the legislation at issue in *Stamps* the Legislature did not do so. *Stamps* distinguished the amendment there at issue from that in *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*). *Harris* considered the effect of Proposition 47 (Gen. Elec. (Nov. 4, 2014)) on convictions, including those resulting from plea agreements. "Proposition 47 reduced certain nonviolent crimes . . . from felonies to misdemeanors" (*Harris*, at p. 988), and created a resentencing petition procedure applicable to those "serving a sentence for a conviction, *whether by trial or plea*, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense" (§ 1170.18, subd. (a), italics added). *Harris* rejected the People's claim that they should be allowed to withdraw from the plea bargain if the defendant successfully petitions for resentencing under Proposition 47. *Harris* observed that "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris*, at p. 991.) *Harris* reasoned "[t]he resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner" and " 'the financial and social benefits of Proposition 47 would not be realized, and the voters' intent and expectations would be frustrated.' " (*Id*. at p. 992.)

### 2. *Assembly Bill 1950's Amendment to Section 1203.1 Created A Statutory Ambiguity With Section 1192.5*

"If defendant stood convicted of a crime . . . as a result of trial or an open plea of guilty as charged" (*Stamps, supra,* 9 Cal.5th at p. 700), the remedy for retroactive application of Assembly Bill 1950 would be straightforward: The probationary term should be reduced to two years, the maximum period allowed under section 1203.1 as amended. (See *People v. Quinn* (2021) 59 Cal.App.5th 874, 879–885.)

However, the inquiry regarding the proper retroactive application of Assembly Bill 1950 is complicated here by the existence of a plea bargain. Section 1192.5 generally constrains what a court may do when presented with a plea agreement between the parties. "Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." ' " (*People v. Segura, supra,* 44 Cal.4th at p. 931.) As noted, section 1192.5, subdivision (b) expressly provides that once it approves a plea agreement, "the court may not proceed as to the plea other than as specified in the plea."

The end result is that the Legislature has enacted two statutes that could bear upon the outcome here. Section 1192.5 prohibits a court from violating plea bargain terms. On the other hand, Assembly Bill 1950 amended section 1203.1 (Stats. 2020, ch. 328, § 2) to reduce the authorized probationary period but, unlike the provision in *Harris,* it made no mention of the legislative intent regarding an application to pleas.

The parties to a plea agreement ordinarily negotiate a disposition that offers benefits to both sides. Here, defendant was initially charged with second degree robbery and faced a maximum sentence of five years in prison. In exchange for dismissal of that count and imposition of a three-year probationary term, defendant pled to second degree burglary. This resolution by plea agreement created an added wrinkle. Although Assembly Bill 1950 generally reflected an intent to reduce probationary terms in applicable cases, it "did not, however, eliminate or reduce sentences related to other offenses and enhancements [like the original robbery charge] that remain legally valid in any particular case, but which may not have been imposed or may have been dismissed as part of the original agreed-upon sentence." (*People v. Scarano* (2022) 74 Cal.App.5th 993, 1011, review granted June 1, 2022, S273830.) Indeed, the parties here could have achieved the same three-year probationary term by having defendant plead to the originally charged second degree robbery count. Had they done so, Assembly Bill 1950 would not have reduced the applicable probationary term because robbery falls within an exception for violent felonies. (See §§ 667.5, subd. (c)(9), 1203.1, subd. (*l*)(2).)

The language of amended section 1203.1 has created a statutory ambiguity regarding *how* the law should be applied retroactively to existing plea agreements. Did the Legislature

intend such application should be governed by section 1192.5, subdivision (b), which mandates "the court may not proceed as to the plea other than as specified in the plea"?  Or did the Legislature intend to exercise its own inherent power to alter plea bargains in cases not yet final?

Generally, a court may not accept an unauthorized plea. " 'Where a trial court is asked to approve an illegal plea bargain — illegal because it violates a policy condition established by the Legislature or the people through the initiative process — the proper course of action for the court is clear.  It should decline to act in excess of its authority and should refuse to approve an arrangement under which it is called upon to do so.' " (*People v. John* (2019) 36 Cal.App.5th 168, 176.)  "Faced with . . . an unlawful plea bargain, a trial court should withhold approval of the bargain." (*People v. Ellis* (1987) 195 Cal.App.3d 334, 342.)  Thus, if a court has approved a plea bargain containing an illegal term, ordinarily, the recourse for a court would *not* be to reform the bargain to make it legal; it would be to withdraw its prior approval of the agreement.  Under such circumstances, a limited remand akin to that employed in *Stamps* might seem most appropriate to allow the prosecution to either agree to the new, reduced term or for the parties to negotiate a different, legally authorized disposition in light of the new law.  (See *Stamps, supra,* 9 Cal.5th at pp. 705–708.)

However, the plea agreement here was undoubtedly lawful at the time the parties negotiated it and the court assented.  As we have previously observed, "[t]hat the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law *that the Legislature has intended to apply to them*." (*Doe v. Harris* (2013) 57 Cal.4th 64,

66, italics added.) We found such an intent in the context of Proposition 47, concluding the electorate did not intend to allow the prosecution to withdraw from a plea bargain when a defendant successfully sought resentencing under that law's new scheme. (See *Harris, supra,* 1 Cal.5th at pp. 991–993.) The Legislature has subsequently codified our statement in *Doe v. Harris* that plea agreements are not insulated "from changes in the law *that the Legislature has intended to apply to them,"* and any provision of a bargain "that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy." (§ 1016.8, subds. (a)(1), (b), italics added.)

So the question remains: When it amended section 1203.1, did the Legislature intend to exercise its own authority to change the terms of an existing plea bargain to reduce the length of an agreed-upon term of probation? In *Harris*, we based our conclusion "on the unambiguous language of section 1170.18 and the expressed intent of Proposition 47" (*Harris, supra,* 1 Cal.5th at p. 992). That level of clarity does not exist here. "At the end of the day, the language of the [the new law] is simply unclear. 'When the language of a statute is ambiguous — that is, when the words of the statute are susceptible to more than one reasonable meaning, given their usual and ordinary meaning and considered in the context of the statute as a whole — we consult other indicia of the [the enactors'] intent, including such extrinsic aids as legislative history and public policy.' " (*People v. Henderson* (2022) 14 Cal.5th 34, 51.) The Legislature clearly intended to reduce the maximum probationary periods going forward. But given section 1192.5's prohibition on a court's modification of a plea agreement, a

textual and contextual ambiguity exists concerning the Legislature's intent to exercise its own authority to modify existing plea agreements.

### 3. *The Legislature Intended To Reduce The Probationary Terms in Nonfinal Plea Agreements*

"Our fundamental task is to determine the Legislature's intent to effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. We examine that language, not in isolation, but in the context of the statutory framework as a whole to discern its scope and purpose and to harmonize the various parts of the enactment. [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language." (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1157–1158.) "Generally, we consult extrinsic sources, like a statute's history, to interpret a statute only when its language is ambiguous." (*People v. Tran* (2022) 13 Cal.5th 1169, 1220.)

Initially, we observe that Assembly Bill 1950 did not reduce the punishment for any particular offense or enhancement. Instead, it reduced the maximum allowable probation term for a wide range of offenses. As noted, a legislative analysis of the bill stated, "Proponents of reducing the length of probation terms argue that probation supervision is most beneficial in the early part of a probation term. In

addition, advocates argue that increased levels of supervision can lead to increased involvement with the criminal justice system due to the likelihood that minor violations will be detected. The proponents of probation reform further contend that reducing the length of probation terms would enable probation officers to more effectively manage their caseloads by focusing resources on those most at risk of reoffending." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 5.) According to the bill's author, a 2018 study "revealed that 20 percent of prison admissions in California are the result of probation violations," and research showed "that probation services, such as mental health care and addiction treatment, are most effective during the first 18 months of supervision. Research also indicates that providing increased supervision and services earlier reduces an individual's likelihood to recidivate." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950, *supra*, as amended June 10, 2020, p. 5.)

The legislative history of Assembly Bill 1950 reflects a determination by the Legislature that a shorter period of probation would more effectively achieve the rehabilitative goals undergirding probation by concentrating services earlier in the probation cycle when they are predicted to be most effective. Further, according to the bill's author, to the extent that "half of those [probation] violations are technical and minor in nature, such as missing a drug rehab appointment or socializing with a friend who has a criminal record" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950, *supra*, as amended June 10, 2020, p. 4), a shorter period of probation would reduce the length of time during which a defendant could violate probation on such technicality. (See Assem. Com. on

Public Safety, Analysis of Assem. Bill No. 1950, *supra*, as amended May 6, 2020, pp. 5–6.) As *Sims* observed, "[T]hese legislative materials . . . suggest the Legislature viewed Assembly Bill No. 1950 as an ameliorative change to the criminal law that would ensure that many probationers avoid imprisonment." (*Sims, supra,* 59 Cal.App.5th at p. 962.)

The Legislature thus enacted Assembly Bill 1950 to reduce the length of probation across the board in order to increase probationary effectiveness and reduce the likelihood of incarceration for minor probation violations. These goals would seem to apply to all probationary terms regardless of whether they are imposed following conviction at trial, an open plea, or a plea agreement. A reduction in punishment for a particular offense says nothing, directly, about the Legislature's intent to modify plea bargains. Yet, the reduction of the authorized probationary period does not speak to punishment precisely, but to the efficiency and efficacy of probation as a rehabilitative device in a variety of circumstances. (See § 1203.1, subd. (*l*).)

As the legislative history indicates, opponents of the bill argued "that a case-by-case approach is needed rather than an across the board decrease in the length of probation terms." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950, *supra*, as amended June 10, 2020, p. 5; see also *id.*, at pp. 7–8.) Similarly, the Attorney General argues "[i]t would be speculative to infer from AB 1950's purposes an intent to deprive the trial court of its broad sentencing discretion and statutorily vested authority to withdraw its prior approval of the plea in cases where a shorter probation term does not further the interests of justice or society." However, the Legislature adopted an across-the-board approach, notwithstanding arguments for a more case-specific consideration. The

Legislature has thus signaled its view that, for an eligible defendant, a shorter period of probation generally serves the public's interests, regardless of how a conviction was secured.

As defendant argues, employing the *Stamps* procedure and allowing the prosecution to withdraw from the plea agreement would appear contrary to the purposes underlying the new law as explored in the previous paragraph. Presumably, the prosecution would seek to withdraw from a plea bargain as a result of Assembly Bill 1950 if it views the newly reduced maximum probationary term as insufficient under the particular circumstances of the case. Yet if the bargained-for statutory probation term is now considered insufficient, the People's only recourse would be to require a plea to a more serious offense, making Assembly Bill 1950's two-year probation limit inapplicable, or to seek a prison term. It seems doubtful the Legislature intended that its ameliorative action would transform plea bargains for probationary terms into dispositions calling for admission of a more serious offense or a state prison sentence, given the legislative history.

Reducing defendant's probationary term from three to two years here would not so "fundamentally alter[] the character of the bargain" that the People should have an opportunity to withdraw from the plea agreement. (*Collins, supra,* 21 Cal.3d at p. 215.) In *Collins*, the defendant was originally charged with attempted burglary, six counts of burglary, two counts of forcible rape, three counts of assault with intent to commit rape, and three counts of forcible oral copulation, as well as an enhancement for a prior felony conviction. As part of a negotiated disposition, he pled guilty to one count of oral copulation without force as a lesser offense to one of the forcible oral copulation allegations. All other substantive offenses and

the prior conviction allegation were dismissed. Criminal proceedings were then suspended and Collins was indefinitely committed to the state hospital as a mentally disordered sex offender. (See *id.* at p. 211.)

Months later, the Legislature amended the statute criminalizing oral copulation. While the act remained a felony if effected by force, consensual oral copulation between nonprisoner adults was decriminalized. Fourteen months after his commitment, Collins was found no longer a danger to others and criminal proceedings were reinstated. The court sentenced him to a prison term of one to 15 years, the term provided under the indeterminate sentencing scheme at the time of his plea. *Collins* reversed the sentence, reasoning that, under *Estrada,* his conviction was not yet final and the defendant could not be sentenced for an offense that was no longer a crime.[12] (See *Collins, supra,* 21 Cal.3d at pp. 212–213.)

However, *Collins* concluded the prosecution was entitled on remand to reinstate the dismissed counts, reasoning: "Critical to plea bargaining is the concept of reciprocal benefits. When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made." (*Collins, supra,* 21 Cal.3d at p. 214.) "The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment. . . . When a defendant

---

[12] The People argued the sentencing court should be allowed to examine the facts underlying the plea, which showed that Collins used force to commit the crime. The court rejected the argument because, notwithstanding the original charge, the act that Collins actually admitted was no longer criminal. (See *Collins, supra,* 21 Cal.3d at p. 213, fn. 1.)

gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain." (*Id*. at p. 215.)

*Collins* is distinguishable. Initially, Prudholme, unlike Collins, would not "gain[] total relief from his vulnerability to sentence." (*Collins, supra,* 21 Cal.3d at p. 215.) He was required to serve a county jail sentence and would remain subject to a probationary term, albeit one of shorter duration. But even assuming a modification granting less than total relief to a defendant could still fundamentally alter a plea bargain under some circumstances, the People here agreed to a disposition that included a probationary term for less than the maximum period of five years allowed under then-existing law. Other than a one year probation term reduction, every other condition of probation would remain in place. (See discussion, *ante*, at pp. 2–3.) Defendant pled guilty to a lesser offense than the single count charged. His conviction of that single count reduced his maximum prison exposure by two years. However, the prosecution was satisfied that the county jail term imposed a sufficient penalty. No additional allegations had been charged, so none were dismissed as part of the agreement. (But see *Stamps, supra,* 9 Cal.5th at p. 693.) Under these circumstances, "we find the People have not been *substantially* deprived of the benefit of the plea agreement, and under *Collins*, they are not entitled to withdraw from it." (*People v. Shelly* (2022) 81 Cal.App.5th 181, 189, italics added; see *Bowden v. Superior Court* (2022) 82 Cal.App.5th 735, 745–747.)

In sum, we determine that, by enacting Assembly Bill 1950, the Legislature intended that its new limitations on the maximum term of probation in amended section 1203.1 should be applied to existing, nonfinal plea agreements while otherwise

maintaining the remainder of the bargain.[13]  We discern this intent from the goals of the legislation, which would be thwarted if the prosecution could routinely withdraw from plea agreements where it deemed the probationary length insufficient.  Assembly Bill 1950 reflects the Legislature's categorical determination that a reduced maximum probationary term serves the public's interest in those cases to which it applies.  As noted, the reduction in punishment for a particular offense, standing alone, says nothing about the Legislature's intent with regard to existing plea bargains in nonfinal cases.  However, Assembly Bill 1950 does not reduce the punishment prescribed for a given offense.  While it appears prompted in part by concern about the potentially punitive effects of probation, it primarily reflects a changed approach to the rehabilitative aspects of probation.  Under these circumstances, we conclude that neither the mandates of section 1192.5 nor the *Stamps* remand procedure should apply.  The proper remedy here is to modify the judgment to reflect the new probationary term of two years.

We conclude by noting that determining legislative intent in these circumstances can be a difficult, divisive, and time-consuming one for courts, which have to discern intent from sometimes opaque sources.  That process, and the attendant delay and confusion it brings, can be avoided by an express statement by the enactors, which they have employed effectively in other circumstances.  (See, e.g., Stats. 2021, ch. 728, § 1.)  We echo the words of one court addressing the issue here that "[g]iven the interpretative difficulties courts have faced, the

---

[13]  We disapprove *People v. Scarano, supra,* 74 Cal.App.5th 993 to the extent it reached a contrary conclusion.

divergence of opinion on these matters, and the sheer volume of nonfinal criminal cases in this state, the majority of which involve plea bargains, the benefit of greater specificity from the Legislature, or the electorate, cannot be overstated." (*People v. Flores* (2022) 77 Cal.App.5th 420, 452–453.) Simply put, "[t]hese issues need not be addressed by appellate litigation if the Legislature expressly states whether the sentencing reforms it enacts are to be given retroactive application on appeal or not, and if so, whether retroactive application applies to negotiated sentences or not." (*People v. Scarano, supra,* 74 Cal.App.5th at p. 1000, fn. 2.) We urge the Legislature, and the electorate with respect to ballot measures, to consider the retroactive application of new laws and to regularly express their intent regarding if and how they should be applied retroactively.

## III.  DISPOSITION

The judgment is modified to reduce the length of probation to two years.  As modified, the judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Prudholme

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 8/26/21 – 4th Dist., Div. 2
**Rehearing Granted**

_____

**Opinion No.** S271057
**Date Filed:**  June 26, 2023

_____

**Court:**  Superior
**County:**  San Bernardino
**Judge:**  Kyle S. Brodie

_____

**Counsel:**

Erica Gambale, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, Steve Oetting and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Erica Gambale
Attorney at Law
P.O. Box 2896
Mission Viejo, CA 92690
(949) 293-3486

Elizabeth M. Kuchar
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9109